(43 South. 972.)

No. 16,379.

Succession of DIELMANN.

(Jan. 7, 1907. On the Merits, April 29, 1907.)

1. APPEAL — PROCEEDINGS FOR TRANSFER OF CAUSE—ORDER OF APPEAL.

The motion to dismiss the appeal is not sustained.

There was an order of appeal fixing the amount of the bond of appeal.

A certified copy of this order was filed in due time.

2. HUSBAND AND WIFE—COMMUNITY PROPERTY—RIGHTS OF SURVIVOR.

A widow in community ruled the liquidators of a bank to show cause why they should not turn over to her, as usufructuary, certain funds in their hands representing proceeds of stock which had been converted into money by the liquidation of the bank. The heirs were made parties, as was also the husband of one of the heirs who had died, leaving him as her universal legatee.

The rule was resisted by several of the defendants. It was claimed that the widow must furnish security under article 558 of the Civil Code, and, failing to do so, the fund must be invested in other bonds or stock under articles 563 and 564 of the Civil Code.

The widow had withdrawn a portion of the funds before the issuing of the rule. She had also acquired the right, title, and interest of several of the heirs. It was claimed that, by receiving and using those funds in the purchase of the shares of certain heirs, she had renounced and extinguished her usufruct, and had thrown herself into relations of joint ownership with the respondents, which entitled them to a partition; that the purchase by the widow of these shares was really to that extent a partition between herself and the vendors of the shares as favored children, excluding respondents from the benefit of a like partition.

*Held,* the provisions of article 558, as to the furnishing of security by the usufructuary, do not refer to the usufruct of the surviving spouse under the usufruct laws of 1844. The usufructuary takes that usufruct without the obligation of giving security. The exemption from giving security extends over the entire share of the deceased, including moneys then on hand. When stocks or notes are converted into money through the maturing of the notes or the liquidation of the corporations in which such stock is owned, the usufructuary holds those proceeds without giving security, just as if they had been money at the opening of the succession. The usufructuary cannot be compelled by the heirs to invest them into bonds or notes under articles 563 and 564 of the Civil Code.

3. SAME—PURCHASE OF INTEREST OF HEIRS.

The purchase by the widow of the shares of certain heirs of their father substituted for the widow's usufructuary rights in such shares a right of ownership therein, but such purchase cannot be invoked as a "renunciation" of her rights. By purchase she did not "forfeit" her usufructuary rights; nor can such purchase be held to be a "partial partition" between herself and the owners of the shares so purchased.

4. SET-OFF AND COUNTERCLAIM — SUBJECT-MATTER—CLAIMS FROM SAME SUBJECT-MATTER—PARTITION.

Defendant in the rule referred to cannot ingraft thereon an action for a partition.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; Fred Durieve King, Judge.

In the matter of the succession of Philip W. Dielmann against the liquidators of the Germania Savings Bank and others. From the judgment, an appeal is taken. Affirmed.

Thomas Gilmore and Joseph Clohesy Gilmore, for appellant Simon J. Reems. James Barkley Rosser, Jr., for appellee Mrs. Mary M. Dielmann. Buck, Walshe & Buck, for appellees liquidators of Germania Savings Bank & Trust Co.

On Motion to Dismiss the Appeal.

BREAUX, C. J. Before considering the grounds urged by appellee for dismissing

the appeal, we deem it in place to state that the judgments appealed from were rendered, and thereafter motions for appeal—suspensive and devolutive—were presented by appellants.

The suspensive appeal is not before us; it having been denied by the court a qua.

The devolutive appeal was perfected by furnishing the required bond.

The grounds of appellee for dismissing the appeal are that there was no order of appeal; in the second place, that Simon J. Reems, one of the appellants, is without legal interest.

Recurring to the first ground, to wit, no order of appeal, we begin by stating that there was an order of appeal. Motion for this order was made in open court, and by the court granted.

The principal objection of appellee in this connection is that the order of appeal is not dated, and that it was not signed by the judge.

At the time that this motion to dismiss the appeal was offered to be filed in the presence of the appellee's counsel, appellant's counsel offered a copy of the minutes, showing that the order was properly entered on the 21st day of October, 1906. That is a date, and all that the rules of practice require.

By consulting the transcript, we find that it shows that the order of appeal was granted.

The motion above referred to as having been offered and filed at the time that the motion to dismiss was filed in this court was for the purpose on the part of the appellant of supplementing that which appeared to have been done as stated in the transcript. It was not as clearly shown in the transcript as it should have been that the order of appeal had been dated on the day that it was granted. The copy to which we have just referred laid at rest all question upon the subject.

The appellee's contention is further that this order of appeal was not signed. Such an order does not require the signature of the judge. It was different in the Conery Case, 115 La. 807, 40 South. 173, for in that case the proceedings were at chambers.

The minutes must be considered as setting forth properly and correctly the action of the court in matter of the appeal. The minutes prove the verity of the proceedings. They are evidence of the highest rank. State of Louisiana v. Euzebe, 42 La. Ann. 727, 7 South. 784.

It follows that the order properly shows what was the action of the judge of the district court in matter of the appeal. There can be no possible good objection to this order.

We have seen that the asserted want of interest in appellant Reems is the other ground in the application for dismissing the appeal. This court will not anticipate issues in order to ascertain whether or not an appellant has or has not an interest. It does not appear on the face of the papers that the appellant is absolutely without interest. He was a party to the proceedings originally and was condemned by the judgment from which he appeals.

In principle every decision is, or should be, appealable. The appeal is a right of the person who has lost and who wishes to have the judgment reversed, annulled, or amended in some particular. The right should never be denied save for good reasons. As relates to interest, it certainly should not be denied to an appellant who alleges that he is entitled to relief from a judgment in which he appears as one of the parties cast.

There is no substantial error in matter of the proceedings, and without such error there is no good ground to dismiss the appeal. We must therefore decline to dismiss the appeal at this time, particularly on any such ground as want of interest, an issue which belongs to the merits, and which we are not called

upon to decide before we will have examined into the merits of the case.

For reasons assigned, the motion to dismiss the appeal is overruled.

### On the Merits—Statement of the Case.

NICHOLLS, J. Philip W. Dielmann died in January, 1897, leaving a widow, Mrs. Mary Dielmann, and five children. Among the latter was Johanna Antoinette Dielmann, who married Simon J. Reems, the present appellant. The assets of the community of Dielmann and wife were inventoried at $174,378 in movable and immovable property in New Orleans. The mother was recognized as the widow in community and usufructuary of her late husband's share falling to the children, issue of the marriage.

The wife of Reems died leaving a last will and testament bequeathing all of her property to her husband. She left no children. Philip Dielmann, one of the children who had survived his father, died without issue. The mother was the forced heir of these two children to the extent fixed by the law. See Reems v. Dielmann, 111 La. 96, 35 South. 473.

In 1903, Reems, the surviving husband of Johanna Antoinette Dielmann, brought suit against Mrs. Dielmann, asking that it be decreed that the usufruct existing in the widow's favor under article 916 of the Civil Code ended, on the death of his wife, on the share she inherited from the portion of the community owned by her father, relying upon the provisions of article 1477 of the Code. Judgment was rendered against him on that issue.

The present suit originated in a rule taken by the widow against her different children and the liquidators of the Germania Savings Bank, in which she prayed (after reciting that there was then in the hands of said liquidators the sum of $95,833, "being the balance remaining in their hands due and belonging to the estate of Philip W. Dielmann, which said balance represented 115 shares of the capital stock of the said Germania Savings Bank, and of which she had been recognized as the owner and usufructuary, and which she was entitled to have paid over to her") that her children and the said liquidators be ordered to show cause, if any they had, why said amount should not be paid over to her as widow in community and usufructuary.

The liquidators answered declaring that they admitted substantially the truth of the allegations of fact contained in the rule; that they were trustees and stakeholders, and ready and willing as such, if all parties in interest in said fund were before the court, to abide by or execute any order which the court might render in the premises.

Mrs. Edward Simeon, one of the heirs, excepted to the rule: (1) That it set forth no cause or right of action; (2) that the relief therein prayed for embraced the identical issues which were propounded in a petition of respondent, which had been put at issue by answer therein by plaintiff in the rule before the court, which issue could not be collaterally determined by rule; that, that issue being then pending, the same issue could not be ingrafted on the proceeding then brought by mover in the rule. She pleaded lis pendens against it. Reserving the benefit of her exceptions, she contingently reiterated the allegations contained in the original and supplemental petitions which she had filed in the matter referred to in her exceptions, and averred that the purpose of her mother was to obtain possession of the funds then held by the liquidators, and misuse, misapply, dissipate, waste, and abuse same, to respondent's prejudice as forced heir, without securing her in her ownership of her interest in said funds; that should her mother get hold of said funds she proposed to donate, hand over, or distribute, said funds among favored children, to respondent's detriment, and to

the peril of her patrimony; that at the date of the death of respondent's father only a perfect usufruct vested in his widow, the mover in the rule, and for the court to decree her to be now entitled to an imperfect usufruct over the funds which would vest absolute ownership under the law would be to vest the widow with a new title greater in scope and degree than was accorded her by law at the dissolution of the community, and for which no authority existed in law. She prayed that the rule be dismissed, with costs.

The rule was submitted to the court for decision; Simon J. Reems not making (up to that time) any opposition or appearance.

The district court rendered judgment on the rule, making the same absolute in so far as to require the liquidators and the defendants in the rule to reinvest the cash in the former's hands, "proceeds of the 115 shares of the capital stock of the Germania Savings Bank," into state and city bonds bearing interest, and paraph (same) as the property of the succession of Philip W. Dielmann, of which mover had the usufruct, so as to prevent their negotiability, and that said bonds be then turned over to mover so that she could enjoy the usufruct without wasting or destroying the principal.

Mrs. Edward Simeon and Mrs. Dielmann, mover in the rule, applied for a new trial.

The former on the grounds:

(1) That the court erred in not decreeing that the usufruct was not extinguished and ordering (because thereof) a distribution of the proceeds.

(2) That as appeared by the supplemental petition filed in proceeding No. 79,062, entitled "Mrs. Emma Simeon v. Mrs. Philip Dielmann et al.," Mrs. Philip Dielmann had become possessed of the proceeds of the bonds and stocks of the New Orleans Brewing Association amounting to $20,000, of the Alabama Rolling Stock amounting to $13,174, and of the Germania Insurance Company amounting

to $3,147, or a total in bulk of $37,288; that said funds had been taken possession of by Mrs. Philip Dielmann in cash; that she (Mrs. Simeon) was an undivided owner of said funds, and Mrs. Dielmann had given no security therefor, and would dissipate, waste, and abuse same, and the order rendered by the court did not order the reinvestment of those funds.

(3) That the issues raised by the rule taken and those in the petitions filed by herself in suit No. 79,062 were so interconnected that the two proceedings should be consolidated.

Mrs. Dielman's motion for a new trial was asked on the ground that she had been recognized by judgment of court as the widow in community and usufructuary of the estate of Philip W. Dielmann, and was the owner absolutely of one-half of all the property belonging to the community of acquets and gains formerly existing between herself and her husband, including the ownership of the sum of $287,500, representing the said 115 shares of the capital stock of the Germania Savings Bank; that the liquidators of said bank paid one-half of said sum to her, and receipted her receipt for the same on the ———— day of January, 1903, which she was entitled to receive and the liquidators authorized to pay. She further alleged that her son William H. Dielmann and Mrs. Mary L. Dielmann had consented in writing that the balance remaining in the hands of the liquidators, to wit, the sum of $143,750, should be paid to her in order that she might enjoy her usufruct thereon. She also alleged that she had acquired by purchase, from Philip F. Reems, the universal legatee of his wife (Mrs. Emily E. H. Reems, deceased), all his rights, title, share, interest, and ownership in and to the succession of his said wife, who was a child of mover, issue of her marriage with her deceased husband, and also in and to the succession of her deceased son,

and said Philip F. Reems had authorized the liquidators of the bank on the 17th of May, 1906, to pay to her the share and interest which she had in said fund, which they had done; that, accordingly, there remained in the hands of the liquidators a balance of $68,280, to which she, in her capacity of widow in community and usufructuary, was entitled; that the judgment of the court which had been rendered was contrary to the law and the evidence, in this, that she, as widow in community (there being issue of her marriage with her husband, Philip W. Dielmann), was not bound to give bond or security as usufructuary.

On June 1, 1906, the district court (after hearing) granted a new trial; the appellant (Simon J. Reems) being present at the trial of the rule for a new trial by his counsel and making no opposition.

On June 6, 1906, the present appellant (Reems) filed the following appearance:

"Now comes Simon J. Reems, defendant, and for answer to the rule says: That his suit against Mrs. Dielmann in the Supreme Court had been decided; that he had been made a nominal defendant thereto and to the suit of Mrs. Simeon v. Mrs. Dielmann, her mother, and does not care to be drawn into litigation or involved for any of the costs of these proceedings, and with reservation of all his rights, and prays to be hence dismissed with costs."

On the 11th of June, 1906, the district court, declaring that the rule filed May 18, 1906, having been submitted to the court, it (by reason of the law and the evidence) ordered, adjudged, and decreed that that rule be made absolute, and, accordingly, that there be judgment in favor of the mover and against the defendants, and ordering the liquidators of the bank to pay over to mover and plaintiff in the rule, widow in community of Philip W. Dielmann, and usufructuary of his estate, the amount in their hands as liquidators, amounting to the sum of $68,281, belonging to the estate of said Philip W. Dielmann, and to which plaintiff is entitled by law to the usufruct thereof.

On June 14, 1906, the court rendered the following order:

"The judgment rendered June 11, 1906, is set aside ex proprio motu, as improvidently rendered; the case, not at the time having been submitted to the court, and the new trial granted June 8, 1906, is now fixed for trial on Friday, June 22, 1906."

On the 18th of June, 1906, Mrs. Emma Simeon excepted to the further prosecution of the rule, on the ground that the succession of Philip W. Dielmann had been closed, and the heirs put in possession by judgment of the court, and therefore the court was without jurisdiction ratione materiæ of the issues set up in the rule, which identical issues between the same parties were then pending in other proceedings at the time the rule was taken.

On the 29th of June, 1906, plaintiff in rule (Mrs. Dielmann) and Mrs. Emma Simeon, through their respective counsel, suggested to the court that the plaintiff (widow in community and usufructuary) had acquired by purchase all the right, title, and interest of Mrs. Emma Simeon in the succession of the deceased father and brother, and that she was entitled to be subrogated to all such rights, titles, and interest, and on their prayer the court ordered that she be subrogated.

On the same day, the court rendered judgment in the matter of the rule of May 15, 1906. Reciting the fact that plaintiff, widow in community and usufructuary, had purchased the share and interest of the defendant, Mrs. E. P. Dielmann, wife of Edward Simeon, since the filing of the rule, it ordered, adjudged, and decreed that the liquidators pay to the plaintiff therein, as widow in community and usufructuary, the balance in their hands, amounting to the sum of $40,729, without prejudice to the share and interest of Simon J. Reems, and that he have judgment for his costs.

On August 10, 1906, Mrs. Dielmann applied for and obtained a rule on the liquidators, Simon J. Reems and William H. Dielmann, to show cause, if any they had, why said liquidators should not pay over to her, as they had been ordered to do by the judgment of the 29th of September.

They answered declaring that all parties in interest had not been made parties to the rule; that subsequent to the order of June 8th, granting a new trial, there was no record of such a new trial having been had, and no note of evidence or evidence taken thereat; that the judgment of September 29th had not been signed; that the delays for a new trial and for appeal had not expired, and they could not safely pay.

Simon J. Reems, having been made a party to this rule, excepted that certain persons had not been served as parties. He opposed the payment of the alleged balance of $40,-729, or any part of the proceeds of the interest ($287,000) of the succession of Philip W. Dielmann to the widow and usufructuary, for the reason that the whole amount of the said proceeds should have been put out at interest as required by law, and that the usufruct alone could be claimed by the widow, but that a payment of different amounts had been made by the liquidators to her as if a partition of the widow's half and the shares of some of the minors had been made; and this was irregular and illegal, and that the said amounts had been employed in buying out or paying off shares of certain children, to wit, that of Mrs. Simeon and that of Emily Dielmann, wife of Philip. That the other children, with their mother and William Dielmann, the son, had the entire control of the assets and property of the succession, to the utter exclusion of himself (Simon Reems) from any participation in said property, and that he was debarred from any knowledge or enjoyment of the share of his deceased wife.

That no account had been filed by the widow, although called upon, and that an inventory was necessary to give an accurate conception of the substance and value of the community and estate. That the purchase of the widow with the funds aforesaid (she having no other means) was a virtual renunciation of her usufruct of the undivided property. That by the use of her one-half of the community for her own ends, as if divided by partition, he was equitably entitled to his share in the said purchases of shares of the other children with the common funds. That the said use by her was a partial partition to his exclusion and injury, and threatened the entire extinction and loss of his share. That he felt that the interest of his wife, which had been bequeathed to him (exceeding in value $40,000), would be destroyed and dissipated. That the succession in this way is diverted from the ownership in common, subject to the legal usufruct of the widow, and is being absorbed by the widow and the remaining children as their individual property, to his exclusion and irreparable loss. That he feared destruction of his common interest as the heir of his wife, one of the children of Philip W. Dielmann. He prayed that the usufruct of said widow be declared forfeited and extinguished; that a partition of the succession be ordered, and he be protected in his interest on the said fund and in the investment of parts thereof in said shares illegally purchased by said widow, and he have a partition of the succession, and he be put in possession of the share of his wife bequeathed to him, free from said usufruct or any further deterioration and reduction and subject thereto; that the rule be dismissed and he have judgment in his favor against Mrs. Dielmann.

Plaintiff in the rule, on the trial thereof on the 20th of September, objected that the exception of Reems was an attempt by him

to raise and inject into the rule new issues not previously raised by him on the trial upon the merits; that it was foreign and irrelevant to the issues presented by the rule, which was a rule upon the liquidators and all parties in interest to show cause why certain moneys in the hands of the liquidators should not be turned over to her as usufructuary; that said rule was made absolute by the court; and that judgment was now final. Plaintiff pleaded the same as res judicata and conclusive on the issues presented in said rule. Plaintiff further objected on the ground that Reems, having in the answer which he had before filed stated that "he had been made merely a nominal party to the litigation, and did not care to be drawn into the litigation or involved in any of the costs thereof, and with reservation of his rights, prayed to be dismissed therefrom," could not at the present time shift his position after disclosing no interest in the proceedings and practically asking the court to excuse him from any further appearance and reserving his right not to be bound by any judgment in the case; that he was estopped from using such reservation as a means of preventing the execution of the judgment on the rule to which he had been made a party; that he had "had his day in court." The court sustained the objection, assigning for further reason that the issue attempted to be raised on the rule then before the court should have been set up when the original rule was taken; that, the court having rendered a judgment making the rule absolute requiring the liquidators to pay over to the widow the sum of money in their hands, that judgment could not be only corrected by appeal; that the only issue in the existing rule was as to the regularity of that judgment. The rule (after hearing the evidence) was taken under advisement. On the 16th of October, Mrs. Dielmann suggested to the court that she had taken a rule in her capacity, as widow in community and usufructuary, against the liquidator of the Germania Savings Bank and the heirs of Philip W. Dielmann; that this rule was tried on the 29th of June, 1906, and the same was made absolute, but, owing to the adjournment of the court for the vacation fixed by law, the judgment thereon was not signed; that no evidence was offered on that trial; that it was necessary and proper, and she desired now, to offer the testimony taken and offered on the former trial of the rule; and that it was necessary that the court grant a new trial to enable her to do so. She prayed accordingly. The court ordered a rule to issue to the liquidators and the other defendants to show cause, if any they had, why a new trial should not be granted. The rule was fixed for trial on the 19th of October and taken up pursuant to assignment; all parties being represented by counsel. The court on that day granted a new trial. The rule of August 10th, submitted on the 20th of September, was dismissed, reserving to the parties whatever legal rights they might have to be set forth in other and proper proceedings.

The case was taken up on the 26th of October, and on the same day a judgment identical with that of the 29th of September was rendered de novo. Reems has appealed.

### Opinion.

We understand appellant to claim, first, that he is entitled to require Mrs. Dielmann either to furnish security for the repayment to the heirs of her husband of the funds, proceeds of the stock of the Germania Savings Bank which she holds in her hands as usufructuary, or, failing so to do, that she be forced to invest the same in stocks or bonds or other movable or immovable property. He urges, in other words, that she

should not be permitted to hold the funds themselves in the form of money which she can dispose of at will.

We do not understand him to assert that, had the stock of the Germania Savings Bank remained as such in her possession, she would have been forced, either to furnish security, or to convert that stock into some other kind of property, but that, those stocks having by the action of the Germania Savings Bank (not by her own) been converted into cash as the result of the liquidation of that bank or its merger with another corporation, the usufructuary stands quoad those funds in a different position from that which she held in reference to the stock itself.

There can be no question as to the fact that a surviving widow in community holding the share of her husband in that community in usufruct under the usufruct law of 1844 is not required to furnish bond or security. This court has repeatedly so held. See Succession of Costa, 19 La. Ann. 14; Boisse v. Dickson, 31 La. Ann. 752; Estate of John Speyer et al. v. Clavee Frantain, Administratrix, 32 La. Ann. 1267.

At the death of her husband, the widow acquired the usufruct of the share of her husband in the community in its entirety, free from the obligation of furnishing security in respect to any part of the property covered by that usufruct. There was no duty on her part to furnish security as to the movables or money which went under her control, while freed from so doing as to the immovables. The obligation to furnish security imposed upon the usufructuary by article 558 of the Civil Code, or article 563, did not extend to such a condition of facts. Had there existed in the Germania Savings Bank, at the time of the death of Mr. Dielmann, funds deposited to his credit to an amount equal to that which subsequently stood to the credit of the succession by reason of the liquidation of that bank, the usufructuary would have been entitled to take possession of the same in that capacity without the giving of security. The mere fact that the form of the asset was changed at a period later than the opening of the succession made no difference as to the rights of the usufructuary touching her duty in respect thereto. The duty imposed by article 653 of the Civil Code upon the usufructuary of putting moneys in his hands out at interest with the consent of the court, and in case of refusal of asking such consent being compelled to make such investment, by order of the court, is a consequence of the prior legal obligation of furnishing security imposed by law on the usufructuary at the time of his acquisition of the usufructuary rights and under the title so acquired. The right of the court to exact an investment by the usufructuary of moneys in his hands is dependent upon a prior refusal by the usufructuary to furnish security when under a legal obligation so to do. If there was no such legal obligation on the part of the usufructuary, the court would have no authority in the premises.

There was, as we have seen, no legal obligation to furnish security thrown upon the usufructuary at the time of the opening of the succession of her husband and as a condition imposed by law of her being granted the usufruct. We do not think that appellant had the right to exact either the giving of security or of making an investment of the funds as claimed by him. Appellant insists that, by using the funds in her hands for the purchase or buying out of the naked ownership of certain heirs of her husband, she had renounced her usufruct to extinguish it.

There was unquestionably (by reason of the purchase of the usufructuary of the rights, title, and interest held by certain heirs of her husband in the succession of her hus-

band) a change in the status of the usufructuary with respect to the shares so acquired; but it certainly cannot be claimed that, by her acquiring a greater right in regard to the property in her hands than that which she had before, she made a "renunciation" of any kind. The change, operated by her purchase from her usufructuary rights over the shares so purchased to rights of full ownership therein, was a change which worked no injury to appellant, and gave him no advantage which he did not have before. It was a matter of no legal concern to him whether or not the shares so purchased continued to be owned by the usufructuary, as his rights were neither more nor less than they were before.

Appellant complains that the usufructuary should have used the funds which she held in her hands as usufructuary in the acquisition of the shares she purchased. We are not informed that she did make such use of those funds. She held in her possession large means of her own which she could use without question from the appellant; but, granting that she did use those funds as claimed, she would not thereby have forfeited her usufructuary rights. She had the right to use those funds subject to the obligation of returning an equal amount later to the husband's heir. Succession of Hayes, 33 La. Ann. 1145; Heirs of Gryder, 37 La. Ann. 640; Tutorship of Minor Heir of Jones, 41 La. Ann. 623, 6 South. 180.

The widow having the right to use the funds, subject to the responsibility stated, appellant has no legal right (certainly not at present) to inquire into the origin of the funds with which she made the purchase of the shares of certain heirs. The funds being hers for use, the widow had the legal right even to donate the same, and to do so to whomsoever she pleased. She had the right to make advances to her children, subject to inquiry at the time of her death as to their extent and effect. If the widow was not willing to make donations and advances to appellant, that was a misfortune to him for which he can make no legal complaint. Appellant urges that by the widow's action she made substantially a partition of the succession between herself and her children. Undoubtedly, the interest of the particular children in the succession of their father has passed to their mother by the effect of their sale to her, but the legal situation brought about had not been that of a partition between the parties. If the particular heirs thought proper to sell their right, title, and interest in their father's succession to their mother, the latter had a legal right to buy and the former to sell. These sales leave appellant as owner in indivision with the mother to the extent of their respective interests when the time comes for a partition between them. Whether that time has yet arrived, under the circumstances of this case, is a matter not properly before us in this rule by the widow against the liquidators to obtain possession of the funds in their hands. Appellant, as a defendant in that rule, cannot ingraft upon it an action for a partition, even if his pleadings were such (as they were not) as to warrant action looking to a partition to be taken upon them. Appellant in his pleadings declares that he is entitled to have a new inventory taken so as to record the same, and place of record the increased value of the property which is now in her hands as usufructuary. He may be entitled to have such fact placed of record in some way, but whether through a new inventory or not we do not now decide. He has not asked for the taking of such an inventory.

The judgment rendered is, we think, correct, and it is hereby affirmed.