399 F.2d 50
 68-2 USTC P 12,547
 Mrs. Marie de Jaham STEWART, Co-Executrix and Mrs. Margaret
Stewart Johnson, Co-Executrix of the Estate of
Seymour J. Stewart, Deceased, Appellants,
v.
Chester A. USRY, District Director of Internal Revenue, New
Orleans District, Appellee.
 No. 25395.
 United States Court of Appeals Fifth Circuit.
 July 29, 1968.
 
 Arthur V. Flotte, New Orleans, .la., for appellants.
 Mitchell Rogovin, Asst. Atty. Gen., Dept. of Justice, Lee A. Jackson, Robert N. Anderson, Benjamin M. Parker, Attys., Dept. of Justice, Washington, D. C., Louis C. LaCour, U.S. Atty., Elaine Chauvin, Asst. U.S. Atty., New Orleans, La., for appellee.
 Before AINSWORTH and SIMPSON, Circuit Judges, and SINGLETON, District judge.
 AINSWORTH, Circuit Judge:
 
 
 1
 Plaintiffs, who are surviving spouse and daughter of decedent Seymour J. Stewart, and co-executrixes of his estate, appeal from a summary judgment in favor of defendant, the District Director of Internal Revenue Service, New Orleans District, sustaining the disallowance of plaintiffs' claim for refund of estate taxes paid, and denying plaintiffs' motion for summary judgment.
 
 
 2
 Decedent was a Louisiana citizen and his estate consisted of both separate and community property as it is known in the Civil Law of Louisiana. By testamentary disposition, decedent bequeathed all property of which he died possessed to his four children in naked ownership,[1] subject to a lifetime usufruct[2] in favor of his wife.[3]
 
 
 3
 Plaintiffs filed a federal estate tax return which included in the computation of the gross estate decedent's separate property and one half of his community property.[4] In arriving at the taxable estate reported, taxpayers claimed a 'marital deduction' under Section 2056 of the Internal Revenue Code of 1954, 26 U.S.C. 2056, of the maximum amount allowable under the federal tax statute, which is fifty per cent of the adjusted gross estate. 26 U.S.C. 2056(c) et seq.[5] Taxpayers' reason for claiming the marital deduction is shown in the tax return to be, 'Surviving Spouse has the IMPERFECT USUFRUCT of said property which is, under the Law of Louisiana, the same as full ownership since she may sell, alienate and/or dispose of same.' The Commissioner rejected the computation of the marital deduction, and determined that the estate was entitled to such a deduction for the value of the following items only: United States Savings Bonds paid for with community assets and one half of the face amount of an insurance policy of which the usufructuary is the beneficiary. The disallowance by the Commissioner was based on his determination that all property, except the savings bonds and life insurance, was subject to the terminable interest limitations of Section 2056(b) of the Internal Revenue Code of 1954. Accordingly, the Commissioner assessed a deficiency against the estate, which taxpayers have paid. Subsequently, taxpayers filed a claim for refund with the District Director, and upon disallowance thereof, taxpayers filed the instant suit to recover the sum of $7,293.72. The District Court granted the motion of the Government of summary judgment and denied that of taxpayers. In a wellreasoned opinion, the District Court concluded that the property rights which the surviving spouse received with respect to property subject to an imperfect usufruct constitute a terminable interest within the meaning of Section 2056(b) of the Internal Revenue Code of 1954, and that such property rights did not qualify for the exception under Section 2056(b)(5) to the terminable interest rule. We affirm.
 
 
 4
 This appeal involves the novel question of whether the interest of the surviving spouse in and to the movable property bequeathed by decedent to his children in naked ownership, subject to an imperfect lifetime usufruct in favor of the surviving spouse, qualifies for the marital deduction allowed in computing a federal estate tax return under Section 2056 of the Internal Revenue Code of 1954 (26U.S.C. 2056).
 
 
 5
 The marital deduction permitted is contained in Section 2056, subsection (a) of the Internal Revenue Code of 1954. Subsection (b)(1) is an exception to subsection (a) and disallows the deduction where the interest passing to the surviving spouse is terminable. Subparagraph (5) of said subsection (b) in turn provides an exception to the 'terminable interest' rule of subsection (b) (1) under certain circumstances and permits the marital deduction.[6]
 
 
 6
 Taxpayers contend that the property rights in question qualify for the marital deduction because they are not subject to the teminable interest limitations contained in subsection (b)(1) of the statute; and further, that if such rights are considered to constitute a terminable interest, they nevertheless come within the exception provided in subsection (b)(5).
 
 
 7
 Louisiana law is controlling in regard to the nature and extend of the property interests bequeathed to the usufructuary. Federal law, however, dictates whether such property interests qualify as a marital deduction.[7]
 
 The terminable interest rule:
 
 8
 In order to exclude from the marital deduction a property interest which would otherwise qualify, it is necessary under subsection (b)(1) of 26 U.S.C. 2056 that the property interest meet the requirements set out in that subsection:
 
 
 9
 1. It must be an interest which will terminate or fail upon the lapse of time or some other contingency.
 
 
 10
 2. An interest, other than the interest passing to the surviving spouse, must also pass from decedent to some other person or persons. Such other person or persons or their heirs may, by reason of the passing of the interest, enjoy or possess any part of the property following the termination of the spouse's interest.
 
 
 11
 The word 'usufruct' is defined by the Louisiana Civil Code as 'the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, unility and advantages which it may produce provided it be without altering the substance of the thing.' LSA-C.C. art. 533.[8] Usufruct is of two kinds: Perfect, 'which is of things which the usufructuary can enjoy without changing their substance,' and Imperfect, 'which is of things which would be useless to the uufructuary, if he did not consume or expend them.' LSA-C.C. art. 534. Taxpayers have claimed the marital deduction only on property interests subject to an imperfect, or quasi, usufruct, as they agree that the usufructuary's interests in the immovable property are terminable and entitle her only to use and enjoyment of such property as that property at her death will revert to the naked owners, the children of the deceased.
 
 
 12
 The first two requirements under 26 U.S.C. 2056(b)(1)-- that the interest to the property (subject to the imperfect usufruct) will terminate and that an interest in the same property will pass to one other than the surviving spouse-- are obviously met by the last will of decedent which provides that the usufruct will cease upon the death of the usufructuary and which bequeaths the naked ownership of the property to the children of decedent. The third requirement-- enjoyment or possession of the property subject to the usufruct by persons other than the usufructuary (the children in this instance) at the termination of the usufruct-- according to taxpayers' contentions, is not satisfied. The contention of taxpayers is that inasmuch as the surviving spouse has unrestricted power over the property subject to the imperfect usufruct and that such property may, under Louisiana law, be completely consumed by the beneficiary, it is possible that nothing may remain at the termination of the usufruct to be possessed or enjoyed by anyone. Taxpayers rely on various Louisiana cases[9] which ascribe the quality of ownership to such 'imperfects' and the distinction made in the Louisiana Civil Code between a perfect and an imperfect usufruct as contained in LSA-C.C. art. 534, supra, and as further provided in LSA-C.C. arts. 535 and 536:
 
 
 13
 Art. 535. 'Perfect usufruct does not transfer to the usufructuary the ownership of the things subject to the usufruct; the usufructuary is bound to use them as a prudent adminstrator would do, to preserve them as much as possible, in order to restore them to the owner as soon as the usufruct terminates.' Art. 536. 'Imperfect usufruct, on the contrary, transfers to the usufructuary the ownership of the things subject to the usufruct, so that he may consume, sell or dispose of them, as he thinks proper, subject to certain charges hereinafter prescribed.'
 
 
 14
 The use of the term 'ownership' along with the powers of the usufructuary delineated in article 536 indicates a type of ownership which is by the article itself subject to certain charges. These charges are contained principally in LSA-C.C. art. 549 which imposes upon the usufructuary certain obligations:
 
 
 15
 Art. 549: 'If the usufruct includes things, which cannot be used without being expended or consumes, or without their substance being changed, the usufructuary has a right to dispose of them at his pleasure, but under the obligation of returning the same quantity, quality and value to the owner, or their estimated price, at the expiration of the usufruct.'
 
 
 16
 The Louisiana courts have interpreted this article as requiring the usufructuary, despite her temporary role as 'owner,' to account to the naked owners for the equivalent of the property subject to the usufruct or its estimated price at the termination of the usufruct. A quasi debtor-creditor relationship is thereby established between the usufructuary and the naked owners, In Succession of Dielmann, 119 La. 101, 117 (1907), 43 So. 972, 977, the Louisiana Supreme Court said:
 
 
 17
 'She (the imperfect usufructuary) had the right to use those funds subject to the obligation of returning an equal amount later to the husband's heir. * * *'
 
 
 18
 In Burdin v. Burdin, 171 La. 7, 18 (1930), 129 So. 651, 654, the Louisiana Supreme Court said:
 
 
 19
 'the usufruct so held by the defendant of the money and other movable effects was an imperfect or quasi usufruct, carrying with it the ownership and the right to dispose of the same, subject to an accounting at the expiration of the usufruct. * * * 'The usufruct of the community property held by the defendany terminated on July 18, 1911, the date of his second marriage; and from that date defendant became a debtor of his children for the money and movable effects theretofore held by him as usufructuary.'[10]
 
 
 20
 Thus the 'ownership' referred to in LSA-C.C. art. 536 is not in the nature of an unqualified ownership[11] which would exclude the rights which other persons may possess or enjoy on the termination of the usufruct. Although, as a practical matter, a surviving spouse may completely deplete, by use, disposition, or otherwise, the property which she is allowed to use and enjoy, the reverse inference is true also-- she may not so deplete the property. All that is necessary to meet the third requirement under the 'terminable interest' rule of the federal tax statute is that other persons 'may possess or enjoy any part of such property.' 26 U.S.C. 2056(b)(1)(B). That the heirs, upon the termination of the usufruct, may eventually enjoy the property in question is clearly contemplated by decedent's bequest of the naked ownership to them and by the mandatory provisions of the Louisiana Civil Code and the case law requiring an accounting and restitution to the naked owners by the usufructuary. Consequently, all of the criteria of 26 U.S.C. 2056(b)(1) for determining a property interest to be terminable have been met, and unless these property interests can qualify as an exception to the terminable interest rule, they may not be included in the marital deduction claimed.
 
 Exception to the terminable interest rule:
 
 21
 In order for an interest passing to the surviving spouse to qualify as an exception under Section 2056(b)(5) of the Internal Revenue Code, it is mandatory that certain requirements be met. One of these requirements is that the surviving spouse have the power to appoint the entire interest which she received from the decedent to herself or another.[12] This power of appointment is further explained in Section 20.2056(b)-5(g)(2), (3), (4) of the Treasury Regulations on Estate Tax:
 
 
 22
 '(2) The power of the surviving spouse must be a power to appoint the entire interest * * * as unqualified owner * * * or to appoint the entire interest * * * as a part of her estate * * * that is, in effect, to dispose of it to whomsoever she pleases * * * '(3) A power is not considered to be a power exercisable by a surviving spouse alone and in all events * * * if the exercise of the power in the surviving spouse to appoint the entire interest * * * to herself or to her estate requires the joinder or consent of any other person. The power is not 'exercisable in all events', if it can be terminated during the life of the surviving spouse by any event other than her complete exercise or release of it. * * * Likewise, if there are any restrictions, either by the terms of the instrument or under applicable local law, on the exercise of a power to consume property * * * for the benefit of the spouse, the power is not exercisable in all events. * * * In order for the power of invasion to be exercisable in all events, the surviving spouse must have the unrestricted power exercisable at any time during her life to use all or any part of the property subject to the power, and to dispose of it in any manner, including the power to dispose of it by gift (whether or not she has power to dispose of it by will). ' (4) The power in the surviving spouse is exercisable in all events only if it exists immediately following the decedent's death. For example, if the power given to the surviving spouse is exercisable during life, but cannot be effectively exercised before distribution of the assets by the executor, the power is not exercisable in all events.'
 
 
 23
 An interpretation of these limitations on the power of appointment supports the conclusion reached by the District Court-- that the exception was designed to relate to those situations where the life tenant has the equivalent of absolute ownership.[13] The power given by the Louisiana Civil Code to the usufructuary to use and dispose of the property subject to the imperfect usufruct is not a power to appoint the property to herself or another to the exclusion of the naked owners. The naked ownership of the property passed to the children at the moment of their father's death.[14] Consequently, they inherit his interest in the property directly from him, not from their mother. It is obvious that she could in no way divest them of their inheritance, and as we have already noted, even if she were to consume or dispose of the entire interest, her estate at the time of her death would be required to account to the children as naked owners because of the debtor-creditor relationship. Taxpayers' contention that a deceased cannot account, and therefore there is no charge upon the property in usufruct, is without merit, inasmuch as her estate will be accountable.
 
 
 24
 The effect of Louisiana law which permits a bequest of a usufruct to a surviving spouse and naked ownership to heirs of the same property is to create dual but separate interests in the property[15] -- usufruct and naked ownership-- which taken together comprise all the attributes of ownership, but this ownership does not, bu virtue of the interests passing from the decedent to the surviving spouse, vest in the spouse. To the contrary, the children at their mother's death will be vested with complete ownership of the property which they have inherited by their father's will. The 'ownership' of the surviving spouse is obviously inferior to that of the children. This concept is completely in accord with the Louisiana doctrine of forced heirship in favor of the children.[16] No such protective device is afforded the surviving spouse, for the apparent reason that Louisiana, being a community property state, provides for other advantages for the survivor. Automatically, at the death of one spouse in community the marital partner is endowed with full ownership of one half of the community theretofore existing between the spouses.[17]
 
 
 25
 Turning now to the federal tax law, we look to the reason behind the marital deduction provision. The District Court very ably summarized the congressional intention as an 'attempt to promote equality of estate tax treatment between married residents of community and non-community property states' (citing S.Rep.No.1013, 80th Cong., 2d Sess., p. 38 (1948-1 Cum.Bull. 285, 305); H.Rep.No.1274, 80th Cong., 2d Sess., p. 27 (1948-1 Cum.Bull. 241, 261)).
 
 
 26
 In United States v. Stapf, 375 U.S. 118, 128, 84 S.Ct. 248, 255, 11 L.Ed.2d 195 (1963), the Supreme Court said:
 
 
 27
 'Our conclusion concerning the congressionally intended result under 812(e)(1) (26 U.S.C. 2056 of the Internal Revenue Code of 1954) accords with the general purpose of Congress in creating the marital deduction. The 1948 tax amendments were intended to equalize the effect of the estate taxes in community property and common-law jurisdictions. Under a community property system, * * * the spouse receives outright ownership of one-half of the community property and only the other one-half is included in the decedent's estate. To equalize the incidence of progressively scaled estate taxes and to adhere to the patterns of state law, the marital deduction permits a deceased spouse, subject to certain requirements, to transfer free of taxes one-half of the non-community property to the surviving spouse. Although applicable to separately held property in a community property state, the primary thrust of this is to extend to taxpayers in common-law States the advantages of 'estate splitting' otherwise available only in community property States. The purpose, however, is only to permit a married couple's property to be taxed in two stages and not to allow a taxexempt transfer of wealth into succeeding generations. Thus the marital deduction is generally restricted to the transfer of property interests that will be includible in the surviving spouse's gross estate. * * *.'
 
 
 28
 The Supreme Court reiterated this interpretation of congressional intent in Northeastern Pa. Nat. B & T. Co. v. United States, 387 U.S. 213, 221, 87 S.Ct. 1573, 1578, 18 L.Ed.2d 726 (1967), in the following language:
 
 
 29
 'Congress' intent to afford a liberal 'estate-splitting' possibility to married couples, where the deductible half of the decedent's estate would ultimately-- if not consumed-- be taxable in the estate of the survivor, is unmistakable.'[18]
 
 
 30
 We are, therefore, of the view that the opinion of the District Court was in all respects correct, and it is
 
 
 31
 Affirmed.
 
 
 
 [1]
 The definition of 'naked ownership' appears in LSA-C.C. art. 490, which provides in pertinent part that 'When an immovable is subject to a usufruct, the owner of it is said to possess the naked ownership.' Naked ownership is not, however, restricted to immovables and attaches as well to movables under the case law of Louisiana. Cf. Succession of Moore, 40 La.Ann. 531 (1888), 4 So. 460
 
 
 [2]
 LSA-C.C. art. 533: 'Usufruct is the right of enjoying a thing, the property of which is vested in another, and to draw from the same all the profit, utility and advantages which it may produce, provided it be without altering the substance of the thing
 For an excellent discussion on the characteristics, purposes and effects of 'usufruct' in Louisiana, see Yiannopoulos, Legal Usufructs, 14 Loyola L.Rev. 1 (1968).
 
 
 [3]
 The will provides in pertinent part as follows:
 'I give and bequeath to my beloved wife Marie de Jaham Stewart, the usufruct of all the property that I may die possessed of, of whatsoever nature and kind wheresoever situated.
 'I give and bequeath to my four (4) children * * *, share and share alike, the naked ownership of all of the property that I may die possessed of, of whatsoever nature and kind and wheresoever situated subject to the usufruct in favor of my wife, Marie de Jaham Stewart.'
 
 
 [4]
 The tax return shows separate property valued at $52,113.03; decedent's one half of community property valued at $99,884.72; and a total gross estate of $151,997.75
 
 
 [5]
 'The nature of the property interest of the decedent determines estate tax treatment. If the decedent spouse's interest is in community property, the surviving spouse's one-half interest is not includible in the estate of the decedent spouse. Separate property is includible in full, but the marital deduction may reduce the taxable portion. Int.Rev.Code 812(e). The marital deduction is limited to fifty per cent of the 'adjusted gross estate,' which includes only separate property (community property being excluded to avoid a duplication of deductions). Cf. Int.Rev.Code 812(e)(2)(C)(i) (26 U.S.C. 2056(c)(2)(C)(i) of the Internal Revenue Code of 1954).' Wisdom and Pigman, Testamentary Dispositions in Louisiana Estate Planning, 26 Tulane L.Rev. 119, 124, n. 24 (1952)
 
 
 [6]
 '2056. Bequests, etc. to surviving spouse
 '(a) Allowance of marital deduction.-- For purposes of the tax imposed by section 2001, the value of the taxable estate shall, except as limited by subsections (b), (c), and (d), be determined by deducting from the value of the gross estate an amount equal to the value of any interest in property which passes or has passed from the decedent to his surviving spouse, but only to the extent that such interest is included in determining the value of the gross estate.
 '(b) Limitation in the case of life estate or other terminable interest.--
 '(1) General rule.-- Where, on the lapse of time, on the occurrence of an event or contingency, or on the failure of an event or contingency to occur, an interest passing to the surviving spouse will terminate or fail, no deduction shall be allowed under this section with respect to such interest--
 '(A) if an interest in such property passes or has passed (for less than an adequate and full consideration in money or money's worth) from the decedent to any person other than such surviving spouse (or the estate of such spouse); and
 '(B) if by reasons of such passing such person (or his heirs or assigns) may possess or enjoy any part of such property after such termination or failure of the interest so passing to the surviving spouse;
 '(5) Life estate with power of appointment in surviving spouse.-- In the case of an interest in property passing from the decedent, if his surviving spouse is entitled for life to all the income from the entire interest, or all the income from a specific portion thereof, payable annually or at more frequent intervals, with power in the surviving spouse to appoint the entire interest, or such specific portion (exercisable in favor of such surviving spouse, or of the estate of such surviving spouse, or in favor of either, whether or not in each case the power is exercisable in favor of others), and with no power in any other person to appoint any part of the interest, or such specific portion, to any person other than the surviving spouse--
 '(A) the interest of such portion thereof so passing shall, for purposes of subsection (a), be considered as passing to the surviving spouse, and
 '(B) no part of the interest so passing shall, for purposes of paragraph (1) (A), be considered as passing to any person other than the surviving spouse.
 'This paragraph shall apply only if such power in the surviving spouse to appoint the entire interest, or such specific portion thereof, whether exercisable by will or during life, is exercisable by such spouse alone and in all events. * * *' 26 U.S.C. 2056.
 
 
 [7]
 'State law creates legal interests and rights. The federal revenue acts designate what interests or rights, so created, shall be taxed.' Morgan v. Commissioner of Internal Revenue, 309 U.S. 78, 80, 60 S.Ct. 424, 426, 84 L.Ed 585 (1940)
 
 
 [8]
 Planiol, the French commentator, in Traite Elementaire De Driot Civil, vol. 1, No. 2775, describes the term thusly:
 'Usufruct confers a double right: the right to use the thing (usus) and the right to receive the fruits (fructus). These are the two elements of which it is composed. They gave it its name. The Latins had the two words usus and fructus which eventually became but one.'
 
 
 [9]
 Vivian State Bank v. Thomason-Lewis Lumber Co., 162 La. 660 (1926), 111 So. 51; Mariana v. Eureka Homestead Soc., 181 La. 125 (1935), 158 So. 642; Succession of Dielmann, 119 La. 101 (1907), 43 So. 972; Danna v. Danna, La.App., 1 Cir., 1935, 161 So. 348
 
 
 [10]
 See also Kelley v. Kelley, 185 La. 185 (1936), 168 So. 769; Mariana v. Eureka Homestead Soc., 181 La. 125 (1935), 158 So. 642. Succession of Block, 137 La. 302 (1915), 68 So. 618; Succession of Grubbs, La.App., 2 Cir., 1966, 182 So.2d 203; Johnson v. Bolt, La.App., 2 Cir., 1933, 146 So. 375
 In commenting on the nature of usufructuary's obligation, Planiol, in his treatise on civil law, Traite Elementaire De Droit Civil, vol. 1, says:
 'It has already been seen * * * that this limitation of the rights of unsufructuaries makes impossible the establishment of usufructs upon consumable things, things of which no use can be made without consuming them. Usufructs upon such things are replaced by a special right, called quasi-usufruct, which amounts to this: the usufructuary acquires the ownership of the things which are subject to his right. This permits him to make use of them in consuming them. But these things are vested in him solely upon condition that he return their equivalent, at the moment of restitution.' Planiol, vol. 1, No. 2777.
 'It is recognized that in such cases the usufructuary may consume these things, provided he gives back like things at the expiration of the usufruct. Such right is called quasi usufruct * * * .' Planiol, vol. 1, No. 2749.
 '(In) the different cases where he (the usufructuary) acquires the ownership of the things subject to his right of enjoyment * * * the nature of his obligation changes. Having become owner he may destroy, consume, alienate. He owes merely the equivalent of what he has received.' Planiol, vol. 1, No. 2864. Cf. Aubry & Rau, Civil Law Translations, vol. II, 7th Ed., 235, pp. 510, 511, in which it is stated: 'Since the recovery of the right of enjoyment by the naked owner operates automatically, the usufructuary or his heirs are obligated to return without delay the objects of the usufruct * * *. These rules must apply even to sums of money contained in the usufruct; hence, if they are not immediately returned, an interest runs automatically in favor of the naked owner from the time the usufruct was extinguished.' Footnote 2 annotated to this section indicates that something more than an ordinary debtorcreditior relationship is contemplated: 'the relations between the usufructuary and the naked owner are not those of an ordinary debtor and creditor. What is involved here is not so much the return of a sum of money, as a restitution of the capital zubject to usufruct, whose enjoyment cannot be extended beyond the duration of the usufruct * * *'
 
 
 [11]
 In Johnson v. Bolt, La.App., 2 Cir., 1933, 146 So. 375, the Louisiana Court of Appeal for the Second Circuit said: 'The word ownership used in article 536 supra, has not the far-reaching significance attached to it in ordinary parlance, nor by Article 488 of the Code. The ownership referred to is defined by the Code as being imperfect. Such ownership is terminable at a certain time or on a condition; Civ.Code art. 490.'
 The general principles of ownership are explained in part in the following Louisiana codal articles:
 LSA-C.C. art. 488: 'Ownership is the right by which a thing belongs to some one in particular, to the exclusion of all other persons.' LSA-C.C. art. 490: 'Ownership is divided into perfect and imperfect.
 'Ownership is perfect, when it is perpetual, and when the thing is unincumbered with any real right towards any other person than the owner.
 'On the contrary, ownership is imperfect, when it is to terminate at a certain time or on a condition, or if the thing, which is the object of it, being an immovable, is charged with any real right towards a third person; as a usufruct, use or servitude. * * *'
 LSA-C.C. art. 491: 'Perfect ownership gives the right to use, to enjoy and to dispose of one's property in the most unlimited manner, provided it is not used in any way prohibited by laws or ordinances.
 * * * *'art
 LSA-C.C. art. 492: 'Imperfect ownership only gives the right of enjoying and disposing of property, when it can be done without injuring the rights of others; that is, of those who may have real or other rights to exercise upon the same property.'
 
 
 [12]
 See footnote 6
 
 
 [13]
 Taxpayers contend that in order to qualify for the marital deduction the interest in the property passing to the surviving spouse need not be absolute ownership, and cite as authority Northeastern Pa. Nat. B. & T. Co. v. United States, 387 U.S. 213, 222, 87 S.Ct. 1573, 1579, 18 L.Ed.2d 726 (1967), wherein the Supreme Court said: 'Obviously Congress did not intend the deduction to be available only with respect to interests equivalent to outright ownership, or trusts would not have been permitted to qualify at all.' In that case the issue was stated to be 'whether a bequest in trust providing for the monthly payment to decedent's widow of a fixed amount (as contrasted to a percentile share of the corpus) can qualify for the estate tax marital deduction * * *.' 387 U.S. 213 at 214, 87 S.Ct. at 1574. The case is inapposite and distinguishable on several grounds, one material distinction being that the will which created the trust granted the widow the power to appoint the entire corpus, one of the requisites for qualifying for the marital deduction under the 'terminable interest' exception
 
 
 [14]
 LSA-C.C. art. 940: 'A succession is acquired by the legal heir, who is called by law to the inheritance, immediately after the death of the deceased person to whom he succeeds
 'This rule applies also to testamentary heirs, to instituted heirs and universal legatees, but not to particular legatees.' LSA-C.C. art. 941: 'The right mentioned in the preceding article is acquired by the heir by the operation of the law alone, before he has taken any step to put himself in possession, or has expressed any will to accept it.
 * * * *'he
 
 
 [15]
 'There exists between the naked owner and the usufructuary no community of interests analogous to that created by indivision or partnership. Their rights, even if they coexist on the same thing, are not only distinct but of a different nature.' Planiol, vol. 1, supra, No. 2829
 
 
 [16]
 LSA-C.C. art. 1493: 'Donations inter vivos or nortis causa cannot exceed twothirds of the property of the disposer, if he leaves, at his decease, a legitimate child; one-half, if he leaves two children; and one-third, if he leaves three or a greater number.'
 
 
 [17]
 LSA-C.C. art. 2406: 'The effects which compose the partnership or community of gains, are divided into two equal portions between the husband and the wife, or between their heirs, at the dissolution of the marriage * * *.'
 
 
 [18]
 See Warren and Surrey, Federal Estate and Gift Taxation (1961), pp. 759-760 (cited with approval by the Supreme Court in United States v. Stapf, supra, in n. 13 of that opinion): 'As indicated previously, one of the basic policies underlying the marital deduction provisions was that property qualifying for the deduction be includible in the surviving spouse's gross estate. No marital deduction was to be allowed where an interest in the property bequeathed to the spouse could pass to other persons, after the termination of her interest, without the inclusion of such interest in the wife's gross estate. Such terminable interests have their own built-in estate tax avoidance, because the interests passing to third parties, stemming as they do from the decedent, automatically escape tax in the estate of the first legatee enjoying the property. * * * 'It was also intended to require property qualifying for the marital deduction to be substantially the same type of interest which would have passed to the surviving spouse under the community property system. Under that system, the surviving spouse receives outright ownership of half the community property and only half of the decedent's property is included in his gross estate. If the wife then dies still owning half of the community property it will be included in her gross estate and all the family's community property will have been subject to estate tax at least once. Thus, only where the surviving spouse receives outright ownership of its practical equivalent should the property qualify for the marital deduction
 'The terminable interest rule found in section 2056(b) attempts to incorporate the foregoing two policies in specific statutory language. By its operation, property which is not included in the decedent's estate because it qualifies for the marital deduction will if still in existence be subject to tax in his spouse's estate. Thus, all the family's property will have been subjected to the estate tax once, and a treatment equivalent to that accorded the community property spouse will have been achieved. * * *.'
 Cf. Hickey, The Usufruct and Taxation, 8 La.B.J. 223, 224 (1961); Wisdom and Pigman, Testamentary Distositions in Louisiana Estate Planning, 26 Tulane L.Rev. 119 (1952), supra; Kelleher, The Marital Deduction Under Louisiana Law, 26 Tulane L.Rev. 154, 160 (1952).