705 So.2d 225 (1997)
SUCCESSION OF Clifton Emile MAJOUE.
No. 97-CA-710.
Court of Appeal of Louisiana, Fifth Circuit.
November 25, 1997.
*226 Kenneth J. Gelpi, Jr., New Orleans, for Plaintiffs-Appellants.
Lawrence J. Fritz, Metairie, for Plaintiff-Appellee.
Before GAUDIN, GRISBAUM and DUFRESNE, JJ.
DUFRESNE, Judge.
A dispute arose in this succession proceeding between decedent's second wife and three surviving grandchildren of his first marriage. The trial judge ruled in favor of the second wife as to all contested issues, and the grandchildren now appeal. For the following reasons, we set aside that portion of the judgment dismissing appellants' motion to traverse the sworn descriptive list, and order that that list be amended to show the grandchildrens' claim for the funds willed to them by their grandmother as a debt of the succession. In all other respects we affirm the judgment of the trial court.
Clifton Emile Majoue died on May 4, 1989. He was first married to Marie Dugas, with whom he had only one child, Clifton, Jr. Both Marie and Clifton, Jr. predeceased decedent. Clifton, Jr. had three children, namely Diane Marie, William Emile, and Clifton Emile, III. Marie Dugas died in 1979, and in October, 1980, decedent married Erma Rea Majoue, to whom he was still married at the time of his death. The parties to this suit are decedent's three grandchildren, and Erma Rea Majoue, executrix of the succession.
In decedent's nuncupative testament by private act, executed on November 18, 1986, he left the forced portion of his estate to the three grandchildren, with a usufruct for life in favor of Erma Rea; the remainder of his estate he left to Erma Rea outright. Erma Rea was also named executrix.
The testament contained a clause stating that the decedent had presented the three-page document to the witnesses, styled "Last Will and Testament of Clifton Emile Majoue," which he had caused to be written out of their presence, and he declared to them that this document was his last will and testament. The clause states that the document was read by Bruce A. Miller, one of the witnesses, to the remaining four witnesses and in the presence of the testator, that all of the witnesses were residents of Jefferson *227 Parish, and that all five witnesses signed the document in the presence of the testator and each other. Finally, the clause recites that the testator was unable to sign the document because of arthritis in his hands.
On March 12, 1990, the grandchildren opened the succession. On May 2, 1990, Erma Rea produced the will and it was probated by the court on that date. Erma Rea was also appointed executrix shortly thereafter. On March 25, 1991, a sworn descriptive list was filed in the record showing a net estate of some $46,000.00, and several weeks later, on April 15, 1991, the grandchildren filed a motion to traverse that list. On October 2, 1991, an amended descriptive list was filed, and on April 21, 1992, a second amended list was filed, showing a net estate of $33,500.00. There was a lull in substantive activity between April 1992, and the summer of 1996, by which time the original attorneys had withdrawn and present counsel of record were retained.
After further discovery and other preliminary matters, the issues in dispute were tried on May 5, 1997, and the trial judge ruled in favor of the executrix on all those issues, as follows:
1. The exception prescription of five years to contest a probated will, urged by the executrix, was sustained.
2. A house on Lime Street, purchased after the marriage of decedent and Erma Rea, was implicitly found to be the community property of these spouses;
3. Some $70,000.00, realized from the sale of Exxon stock which decedent had inherited from his mother, was implicitly found to have been donated to Erma Rea prior to decedent's death, and the exception of prescription of five years for the action to reduce this donation was sustained.
4. Another $65,500.00, the value of the estate of Marie Dugas, decedent's first wife, over which he held the usufruct and the grandchildren the naked ownership, was implicitly found to have been totally depleted for his medical expenses; and
5. The rule to traverse the second amended sworn descriptive list was dismissed, and the list was approved by the court.
The grandchildren have now appealed urging that the above rulings were wrong.
As to the prescription issue, La. Civ. Code, Art. 3497, provides that "an action for annulment of a testament," is subject to the prescription of five years. Further, La.Code Civ. Pro., Art. 2931, states that "a probated testament may be annulled only by a direct action brought in the succession proceeding." In the present case, there is no question that no such action was brought until March 12, 1997, almost seven years after probate of the will on May 2, 1990. Clearly, the action was prescribed on its face, and in that circumstance, the burden fell to the grandchildren to show why the exception should not be maintained.
The grandchildren urged in this regard that the executrix had filed the will for probate knowing that it was invalid because of material falsehoods in it, and hid these falsehoods from them until sometime in 1996, after prescription had run. Specifically, they contend that decedent never suffered from arthritis in his hands, and that the executrix knew that the clause in the will stating otherwise was false, but hid this information from and had the will probated notwithstanding. They contend that because the executrix hid from them the falsity of the representation in the will as to arthritis, the principle of contra non valentum should be applied to defeat the exception. No explanation is provided as to why the grandchildren had no knowledge of their grandfather's physical condition, or whether and why he was unable to sign his name, prior to his death.
Nonetheless, the difficulty with the above argument is that the alleged falsehood is irrelevant to the validity of the will. The formalities of the nuncupative testament by private act are set forth at La. Civ.Code, Arts. 1582 and 1583. Art. 1583, states that "this testament is subject to no other formality than those prescribed by this and the preceding article." The only language relating to the testator not signing the will also appears in Art. 1583, as follows:
[The testament] must be signed by the testator, if he knows how or is able to sign....
*228 There is no requirement that there be any explanation as to why the testator cannot sign, as is the case for the nuncupative testament by public act, Art. 1579.
Moreover, in the present matter the testator gave as the reason he could not sign his apparent belief that his hands were crippled by arthritis. That information does appear in the document itself, and three of the witnesses submitted an affidavit to the probate court stating that arthritis was the reason given by the testator for not signing the will. The will is otherwise in compliance with all of the requisite formalities, and in this court's opinion whether the decedent actually suffered from arthritis, as he represented to the witnesses, or whether his inability to sign was due to some other condition, is irrelevant to the validity of the document. That being so, the grandchildren have not shown any reason why the exception of prescription should not have been sustained based on the passage of five years, and we therefore affirm the judgment so ruling.
The remaining issues involve factual determinations made by the trial judge. When such determinations are at issue, the standard of review is whether the facts found by the trier of fact are manifestly erroneous or clearly wrong, Stobart v. State through DOTD, 617 So.2d 880 (La.1993). Under this standard, when there is conflicting evidence the fact-finder's reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the reviewing court may have made other choices had it been sitting as the trier of fact, Id.
Appellants' next assignment of error concerns the house on Lime street. Property in possession of a spouse during the existence of a community is presumed to be community property, La. Civ.Code, Art. 2338. The house was purchased for $70,000.00, in the names of decedent and Erma Rea, after their marriage. She testified that she helped pay for the house with some $40,000.00 that she brought to the marriage and had on hand in a safety deposit box at a local bank. Accepting this evidence as true, there is no question that the house was community property. The grandchildren sought to show otherwise, but their only evidence on this point was the testimony of an officer of the bank to the effect that their records did not show that Erma Rea ever had a safety deposit box at the institution. The trier of fact did not find this scant evidence sufficient to overcome the presumption of community that arose from acquisition and possession of the property during the marriage, recordation of title in both spouses names, and the testimony of the executrix that she made a substantial contribution to the purchase price. We see no manifest error in this conclusion.
The third question concerns shares of Exxon stock inherited by decedent from his mother in a judgment of possession of March, 1988. The joint income tax return filed by decedent and the executrix showed a stock sale during that year of $73,064.00, and other evidence established that on September 2, 1988, an annuity for $70,000.00 was established in the name of Erma Rea. She testified that decedent had given her these funds. Under La. Civ.Code, Art. 1539, no formalities are required for a gift of corporeal movables except delivery with donative intent. Money is a corporeal movable, La. Civ.Code, Art. 471; Succession of Amos, 422 So.2d 605 (La.App. 3rd Cir.1982). On the above facts, the trier of fact implicitly found that such a manual gift had taken place.
We state that the trial judge implicitly found that a valid gift had taken place because the second question involving these funds was an exception of five years prescription to recover excessive donations urged by the executrix. It is clear on the record that no direct action was brought against Erma Rea, the donee, to recover these funds within five years the death of the decedent, La. Civ.Code, Arts. 1504 and 3497. The exception was maintained by the trial judge, and thus he must necessarily have made a preliminary finding that a valid donation had taken place. Again, we find no error in either determination made by the trier of fact.
The last two asserted errors relate to the grandchildrens' interest in the funds left by decedent's first wife, their grandmother. As *229 mentioned above, Marie Dugas left the naked ownership of her estate, consisting of some $65,500.00 in liquid assets, to the grandchildren, and usufruct of these funds to decedent. During the course of the succession the executrix filed a sworn accounting of these funds basically showing that they had been exhausted for decedent's medical care during the last five years of his life. On that showing, the trial judge apparently concluded that because the funds had been spent, there was nothing to include on the sworn descriptive list. We disagree with this conclusion.
At the termination of a usufruct of consumables, of which money is one, the usufructuary owes to the naked owners the value that the thing had at the commencement of the usufruct, La. Civ.Code, Arts. 536 and 538. This obligation is in the nature of a debt owed by the succession to the owners, and must therefore be shown as such on the sworn descriptive list. We therefore order that the sworn descriptive list be amended to show the claim of the grandchildren against the estate in the amount of $65,525.61, the value of their grandmother's net estate as shown on the petition for possession in her succession proceedings.
The grandchildren also assert claims for a 1/3 interest in two cemetery plots allegedly owned by decedent via inheritance from his mother. While these plots are shown in his mother's succession, there was no evidence presented to show that decedent still owned this property at his death, and therefore that they should have been shown on the descriptive list. Similarly, two other annuities which existed in the name of Erma Rea were not shown in any way to be either the separate or community property of decedent. Erma Rea testified that these funds came to her from her parents upon their deaths, and also from a pension plan which she had from her employment at Sears. The trial judge apparently believed this testimony, and on this showing these items were also properly omitted from the descriptive list.
For the foregoing reasons, the judgment of the trial court is amended to order that the grandchildrens' claim for their inheritance from their grandmother be included in the sworn descriptive list as a debt of the succession. In all other respects, the judgment is affirmed.
AFFIRMED.