MOORE, J.
 

 | ,The appellant, First United Methodist Church of Monroe (“Church”), appeals the judgment below wherein the trial court held that the Succession of James Roy-Catching was not required to satisfy any legacies in the will, including a legacy consisting of a $100,000 Certificate of Deposit to the Church, because the value of the succession was less than the value of the usufructuary debt the decedent owed to his son, the naked owner, who is the executor of his father’s will. For the following reasons, we affirm.
 

 FACTS
 

 The story begins with the death of the mother, Virgie Hicks Catching, on Christmas Eve, 1998. Mrs. Catching died intestate. The community was valued at $953,516.98. According to the laws of intestacy, upon Mrs. Catching’s death, the decedent’s only surviving son, Phillip, became the naked owner of his mother’s undivided one-half interest in the community, and her husband, James, obtained the usufruct of this property whose value was $476,758.49.
 
 [1]
 

 Two years after Virgie’s death, James purchased four individual annuities over a one-year period. The annuities were valued at $100,000, $100,000, $99,000 and $99,000, respectively. Phillip Catching was named the beneficiary of each annuity. James also made gifts of cars to his son and grandchildren in a total amount exceeding $100,000.
 

 James executed his last will and testament on June 14, 2004, some three years or more after he purchased the annuities. In the will, he made a |2bequest to the Church of a $100,000 Certificate of Deposit (“CD”) with Capital One Bank. The only other particular legacy in the will was a grandfather clock, which was apparently given to the legatee when the house was sold. James named Phillip his universal legatee, that is, leaving all the remainder of his property to Phillip. He also directed in his will that all administration debts be paid before any legacies were distributed.
 

 James died on September 2, 2007. At that time, Phillip received approximately $398,000 as the beneficiary of the annuities. The succession was opened on January 3, 2008 and Phillip was appointed the Executor. He petitioned to file a “First and Final Tableau of Distribution” in which he sought authorization to pay the debts and charges of the succession. Included among the debts of the succession paid was partial payment of the “usufruc-tuary debt” owed to Phillip, the naked owner of his mother’s estate.
 

 The detailed descriptive list showed that James’ total assets were only $330,306.76. However, the total debts were $482,391.10, including the $476,758.49 usufructuary debt. Because the administration costs (debts and expenses) exceeded the assets, no legacies were satisfied, including the bequest of the CD to the Church.
 

 The Church opposed the tableau of distribution, and, after discovering the existence of the annuities and
 
 inter vivos
 
 automobile gifts, claimed that the usufruct debt was satisfied by payment of the annuities and gifts. Alternatively, the Church argued that the usufructuary obligation was extinguished by confusion upon the death of James (and termination of the usufruct
 
 *451
 
 by operation of law), arguing that, inasmuch as Phillip is the |,.¡universal legatee, he stands in the same position as James.
 

 After an evidentiary hearing, the court held that La. R.S. 22:912(B)(1) exempted the proceeds of the annuities from the succession as a matter of law, upheld the Tableau of Distribution and denied the Church’s claims.
 

 The Church filed this appeal.
 

 DISCUSSION
 

 Because the outcome of this case depends on statutory interpretation, that is, a matter of law, our standard of review is
 
 de novo.
 

 The first issue raised by the Church is whether the usufructuary’s obligation to either pay the value of the usu-fruct over the consumables or deliver similar things of the same quality and quantity is considered a succession debt.
 

 The parties agree that all the mother’s property that was subject to the usufruct is classified as “consumables” under the Civil Code because her estate consisted solely of money, bank accounts, CDs, and the like. La. C.C. art. 536. Consumables are called such because, according to the Civil Code, they cannot be used without being expended or consumed.
 
 Id.
 

 Also, “if the things subject to the usu-fruct are consumables, the usufructuary becomes the owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usu-fruct, he is bound to pay the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality.” La. C.C. art. 538.
 

 Because James became the usufructuary of the mother’s half of the |4community, which consisted solely (after sale of the house) of consumables, he became the owner of the consumables and was free to dispose of or consume them as he wished. This would have not destroyed, however, his obligation to Phillip to “pay the naked owner either the value of the consumables at the time he began the ususfruct, or deliver things of the same quantity and quality” at the termination of the usufruct. La. C.C. art. 538.
 

 The usufruct terminated upon James’ death and became a debt owed by the succession to the naked owner. In
 
 Succession of Majoue,
 
 97-710 (La.App. 5 Cir. 11/25/97), 705 So.2d 225, the court held:
 

 At the termination of a usufruct of consumables, of which money is one, the usufructuary owes to the naked owners the value that the thing had at the commencement of the usufruct, La. C.C. arts. 536 and 538. This obligation is in the nature of a debt owed by the succession to the owners, and must therefore be shown as such on the sworn descriptive list. (Emphasis supplied).
 

 Accordingly, this assignment is without merit.
 

 By his second assignment of error, the Church contends that the proceeds of four annuities purchased by the decedent several years before his death and which he named his son the beneficiary should be applied as satisfaction of the usufructuary debt. The Church insists that because James purchased the annuities during his usufruct and made his son Phillip the beneficiary, this somehow became “delivery of things of the same quantity and quality” in satisfaction of the usufruct. However, the fact that Phillip is the named beneficiary of the annuity is an incidental fact. James could have made anyone the beneficiary, including the Church or even a stranger. Had |she done so, the result would have been the same, and the Church would still be left with the unsatisfied particular lega
 
 *452
 
 cy of the $100,000 CD at Capital One, and Phillip, as a creditor of the succession, would still have received only partial satisfaction of his father’s usufructuary obligation to him.
 

 The Church contends that since the obligation of the usufructuary is not a debt to pay money in the ordinary sense, but to deliver (pay) the value of the consumables or deliver to him things of the same quantity and quality, by naming Phillip the beneficiary of the annuities, James provided for the delivery of consumables of the same quantity and quality obtained by the usufruct. His obligation of delivery, the Church argues, was discharged by the delivery of the annuities upon his death and other
 
 inter vivos
 
 gifts during his lifetime. There is no evidence, however, that James Catching, in making automobile gifts and annuity investments, was attempting to renounce his usufruct or pay his obligation under Civil Code Art. 538 to the naked owner by purchasing gifts for his family members or by purchasing annuities for investment purposes which named his son as beneficiary upon his death.
 

 Section (B)(1) La. R.S. 22:912(B)(1) governs the question of whether life insurance policies and annuities are included in the succession for purposes of satisfying the claims of a legatee. The relevant portion of the statute reads:
 

 B. (1) The lawful beneficiary, assign-ee, or payee, including the annuitant’s estate, of an annuity contract, heretofore or hereafter effected, shall be entitled to the proceeds and avails of the contract against the creditors and representatives of the annuitant or the person effecting the contract, or the estate of either, and against the heirs and | (¡legatees of either such person, saving the rights of forced heirs, and such proceeds and avails shall also be exempt from all liability for any debt of such beneficiary, payee, or assignee or estate, existing at the time the proceeds or avails are made available for his own use.
 

 The Church argues, however, that the statute does not exclude the annuities from being included in the Tableau of Distribution, relying chiefly on the case of
 
 In re Succession of Halligan,
 
 2003-1168 (La.App. 1 Cir. 9/17/04), 887 So.2d 109,
 
 writ denied
 
 2004-2619 (La.12/17/04), 888 So.2d 875. In that case the court held that the death benefit of a non-qualified, tax-deferred, single-premium annuity, which was paid directly to the beneficiary following death of the decedent, fell within the estate of the decedent and was subject to inheritance tax. We observe, however, that the court in
 
 Halligan
 
 also said that R.S. 22:912 did provide certain exemptions for annuity proceeds that were similar to those provided for life insurance benefits, but that those similarities did not mandate the conclusion that annuity contracts were to be treated the same as life insurance policies for
 
 all
 
 purposes, and the beneficiary did not establish other provisions that would exempt or exclude annuity proceeds from inheritance tax.
 

 We conclude that the holding of
 
 Halligan
 
 is limited in its scope to valuing the estate for purposes of inheritance tax.
 

 Accordingly, the usufructuary obligation became a debt of the succession upon James’ death and was not extinguished by fulfillment of the contractual terms of the annuity. The annuities were correctly excluded from the Tableau of Distribution for purposes of satisfaction of the succession debts and legacies.
 

 |7In its final assignment of error, the Church contends that, assuming the decedent’s usufructuary obligation to restore the value of the consumables to the naked owner constituted a succession debt,
 
 *453
 
 the debt was extinguished by confusion since the son, as the naked owner and universal legatee, became both creditor and debtor of the decedent’s estate.
 

 Louisiana Civil Code Article 956 provides that “[a] successor may assert a claim that he has as a creditor of the estate whether he accepts or renounces his succession rights.” The 1997 revision comments to this article state:
 

 Except to the extent that rights may be extinguished by confusion, a successor who is a creditor of the estate should have the right to pursue his claims as a creditor.
 
 See
 
 C.C. art. 1903 (1870). The roles of successor and creditor may be different, and when they are, the successor is not precluded from asserting his right as a creditor.
 
 See, e.g.,
 
 Art. 1616,
 
 infra.
 

 Finally, under the section, “Rules for the Interpretation of Legacies,” La. C.C. art. 1616 states that “[a] legacy to a creditor is not applied toward satisfaction of the debt unless the testator clearly so indicates.”
 

 These articles must be read
 
 in pan materia,
 
 and in doing so it is clear that the intent of these articles is avoid forcing a legatee to renounce his rights as a creditor or vice versa, unless the testator clearly intended that the legacy is to be applied toward satisfaction of the debt. In this instance, Phillip’s role as a creditor to the succession, arising out of his naked ownership of the consumables that were subject to the usufruct, is a different and distinct role from his position as a universal legatee. James Catching did not indicate that his legacy to Phillip was to be applied to satisfaction of his usufructuary debt. Hence, the debt was not extinguished | sby confusion. Moreover, James’s will instructed that all debts of the succession be paid before any legacies are satisfied. Because the debts of the succession exceeded the assets, none of the legacies, including Phillip’s legacy, was satisfied. Accordingly, this assignment is without merit.
 

 Conclusion
 

 For these reasons, the judgment of the trial court is affirmed at appellant’s cost.
 

 AFFIRMED.
 

 [1]
 

 . The couple actually owned a house at the time of Virgie's death, but it was apparently sold shortly after her death, making all the estate property "consumables” for purposes of this case.