[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10440
_____

D.C. Docket No. 8:12-cv-01648-EAK-AEP

AUSTIN AND LAURATO, P.A.,
SISCO-LAW, P.A.,

Plaintiffs - Appellants,

versus

UNITED STATES OF AMERICA,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 24, 2013)

Before BARKETT, MARCUS and HILL, Circuit Judges.

PER CURIAM:

Two law firms, Austin and Laurato, P.A. and Sisco-Law, P.A. (collectively,

"the Firms") appeal from the district court's order dismissing their wrongful levy

civil action against the United States for lack of subject matter jurisdiction. The district court concluded sua sponte that the Firms lacked Article III standing, and also agreed with the government that dismissal was warranted because the Firms failed to bring their wrongful levy action within the nine month limitations period prescribed by Congress in 26 U.S.C. § 6532(c). The district court further denied as futile the Firms' request to amend their complaint to include a procedural due process claim.

After thorough review, we affirm. The Firms do not have a specific possessory interest in, or valid lien on the funds levied by the IRS, and therefore lack standing to bring this action. Moreover, the district court correctly concluded that amendation of the Firms' complaint would have been futile.

I.

Because this case was dismissed at the pleading stage, we take the facts alleged in the Firms' complaint to be true, and draw all reasonable inferences in favor of the Firms. See Williams v. Mohawk Indus., 465 F.3d 1277, 1281 n.1 (11th Cir. 2006). In July 2010, the City of Tampa seized funds from individuals and entities in connection with a criminal matter. In August 2010, Austin and Laurato, P.A. entered into a contingency fee contract with Michelle Gonzalez and First Medical Group to represent them in a civil action seeking the return of the seized funds; Sisco-Law, P.A. entered into a similar contingency fee contract with

Jorge M. Gonzalez-Betancourt.  The two law firms brought suit in Florida circuit court on behalf of their clients pursuant to the Florida Contraband Forfeiture Act, Fla. Stat. § 932.701 et seq.   In re Forfeiture of Two Hundred Twenty-One Thousand Eight Hundred Ninety-Eight Dollars ($221,898.00) in U.S. Currency, No. 10-CA-1620, Circuit Court of the Thirteenth Judicial Circuit, Hillsborough County, Florida.

The Firms were largely successful in their state court action.  After an adversarial probable cause hearing, the state trial judge ordered the City of Tampa to return the funds to the claimants.  This order was later summarily affirmed by Florida's Second District Court of Appeals.  In re Forfeiture of Two Hundred Twenty-One Thousand Eight Hundred Ninety-Eight Dollars ($221,898.00) in U.S. Currency, 64 So. 3d 683 (Fla. 2d Dist. Ct. App. 2011).  However, the clients never recovered the funds.  On August 27, 2010, two days after the state trial court entered its order, the IRS served a Notice of Levy upon the City of Tampa, seeking possession of the seized funds to satisfy the outstanding federal tax liability of Jorge M. Gonzalez-Betancourt.  In June 2011, the City of Tampa transferred the seized funds to the United States Attorney for the Middle District of Florida, who in turn transferred the funds to the IRS.

After this transfer, the state trial court denied the claimants' pending motion for release of the seized funds as moot because the funds had been turned over to

the IRS.  The court wrote in its August 2011 order that "Claimants' remedies are through the internal processes of the I.R.S. or the United States District Court." The Firms also attempted to recover the funds outside of court, sending a letter to the U.S. Attorney for the Middle District of Florida, on behalf of both firms and their clients, seeking return of the moneys; according to the Firms, they never received a reply from the U.S. Attorney's Office.

It wasn't until almost a year later, in June 2012, that the Firms wrote the Internal Revenue Service, unsuccessfully seeking a meeting with the revenue officer who was assigned to the taxpayers' case.  In June and July 2012, the Firms wrote to the Taxpayer Advocate Service, requesting assistance from the office and again demanding the return of the seized funds.  Soon thereafter, the Firms received a letter from the Taxpayer Advocate Service denying their request for assistance and indicating that the only recourse they had was to file a lawsuit.

The Firms then brought this wrongful levy action in the United States District Court for the Middle District of Florida.  See 26 U.S.C. § 7426(a)(1) ("If a levy has been made on property or property has been sold pursuant to a levy, any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States.").  Notably, the Firms are not

4

representing their state court clients in this action; rather, the Firms are the plaintiffs, as they attempt to avail themselves of the priority afforded by the Internal Revenue Code to attorney's liens against a judgment or settlement. See 26 U.S.C. § 6323(b)(8).

The government moved to dismiss because the Firms failed to bring their wrongful levy suit within the nine-month limitations period prescribed in the governing statute, 26 U.S.C. § 6532(c) ("[N]o suit or proceeding under section 7426 shall be begun after the expiration of 9 months from the date of the levy or agreement giving rise to such action."). There is no dispute that the date of the levy was August 27, 2010, and the date the suit was commenced was July 24, 2012, nearly two years later. The district court agreed with the government that the suit was untimely and, therefore, that because limitations periods against the United States involve the federal government's waiver of sovereign immunity, the district court lacked subject matter jurisdiction over the action. The district court also concluded it lacked subject matter jurisdiction based on its sua sponte determination that the Firms lacked standing because they had no legally protected interest in the levied funds. Finally, the trial court dismissed the cause with prejudice, finding that an amendment adding a due process claim would have been futile.

5

The Firms moved for reconsideration.  The district court agreed to hear additional argument on the jurisdictional issues, but again rejected the Firms' position and left its original order intact.  This timely appeal followed.

II.

We review a district court's determination that it lacked subject matter jurisdiction, including its standing determination, de novo.  See Cmty. State Bank v. Strong, 651 F.3d 1241, 1251 (11th Cir. 2011); Dermer v. Miami-Dade Cnty., 599 F.3d 1217, 1220 (11th Cir. 2010); Bochese v. Town of Ponce Inlet, 405 F.3d 964, 975 (11th Cir. 2005).  In addition, "[a]lthough we review a district court's denial of a motion to amend only for abuse of discretion, we review de novo a decision that a particular amendment to the complaint would be futile."  Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).

We agree with the district court that the Firms lacked standing to commence this action.  An essential prerequisite to a federal court's power to entertain a suit is an Article III case or controversy.  "It is by now axiomatic that a plaintiff must have standing to invoke the jurisdiction of the federal courts."  KH Outdoor, LLC v. City of Trussville, 458 F.3d 1261, 1266 (11th Cir. 2006).  It is also abundantly clear that the plaintiffs bear the burden of establishing each of the three elements comprising constitutional standing: injury in fact, causation, and redressability.  See Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992); Elend v.

Basham, 471 F.3d 1199, 1206 (11th Cir. 2006).  Although the government had not moved to dismiss on standing grounds, the district court correctly determined that it was "obliged to consider questions of standing regardless of whether the parties have raised them."  Bochese, 405 F.3d at 975.

It is the first of the standing requirements -- injury in fact -- that ends the inquiry in this case.  An injury in fact is an invasion of a legally protected interest that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."  Lujan, 504 U.S. at 560 (internal quotation marks omitted).  To establish an injury in fact, then, the plaintiff must demonstrate that it has a "legally protected interest" that has been harmed.  Bochese, 405 F.3d at 980.  When a claim is based on a federal statute, "the inquiry as to standing must begin with a determination of whether the statute in question authorizes review at the behest of the plaintiff."  Sierra Club v. Morton, 405 U.S. 727, 732 (1972).

The Firms bring their claims under the third party wrongful levy statute, 26 U.S.C. § 7426.  An IRS tax levy is only a provisional remedy, and "the priority of interests in the seized property is determined in a Section 7426 wrongful levy action after the levy is executed."  Capuano v. United States, 955 F.2d 1427, 1429 (11th Cir. 1992).  But not just anyone can challenge the administrative levy; indeed, the text of the statute permits suit only by a person who "claims an interest in or lien on" the property at issue.  26 U.S.C. § 7426(a)(1).  Not surprisingly,

numerous appellate courts have held that standing to bring a claim under the wrongful levy statute requires a specific and legally cognizable interest in the property levied upon.  More precisely, these courts have held, and we agree, that "the right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon." Frierdich v. United States, 985 F.2d 379, 383 (7th Cir. 1993); see also McGinness v. United States, 90 F.3d 143, 146 (6th Cir. 1996) ("To have standing to challenge a wrongful levy under § 7426, one must have an interest, such as a fee simple or equivalent interest, a possessory interest, or a security interest, in the property levied upon, or a lien on the property at issue . . . ."); Aspinall v. United States, 984 F.2d 355, 357-58 (10th Cir. 1993); Valley Fin., Inc. v. United States, 629 F.2d 162, 168 (D.C. Cir. 1980).  Surveying the language and legislative history of § 7426, the D.C. Circuit explained that the statute is limited in its scope and that its language, "by effectively equating the terms 'interest' and 'lien' and relating both to 'property,' indicates that only persons claiming specific, possessory rights are entitled to seek judicial review." Valley Fin., 629 F.2d at 168.  Thus the court held that general creditors lacked standing to sue under the statute, because "[t]heir mere claim of a contractual right to be paid, unsecured by a lien or other specifically enforceable property interest, does not provide judicial access." Id.  Moreover, reaching the opposite conclusion, the

8

court observed, "would invite litigation from numerous parties only remotely aggrieved by IRS levies, with consequent disruptive effects on federal tax enforcement." Id.

Although the wrongful levy statute undoubtedly creates a federal cause of action, the threshold question of whether a plaintiff has a property interest for purposes of the Internal Revenue Code is governed by state law. See generally Aquilino v. United States, 363 U.S. 509, 513 (1960) ("[I]t has long been the rule that in the application of a federal revenue act, state law controls in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute." (internal quotation marks and alterations omitted)); accord Aspinall, 984 F.2d at 358.  Thus, whether the Firms had standing to bring this wrongful levy action boils down to whether under Florida law they had a valid lien or other specific property interest in the funds levied upon.  We hold they do not.

The Firms claim they have a valid attorney's charging lien on the funds because of their contingency fee contracts and their success in obtaining a state court order directing the City of Tampa to return the seized funds to their clients. Under Florida law, an attorney's charging lien is an equitable means by which to secure the attorney's right to have costs and fees owed for legal services secured by the recovery in a lawsuit, a right that has been recognized for over a century. See In re Washington, 242 F.3d 1320, 1323 (11th Cir. 2001) (citing Sinclair, Louis,

Siegel, Heath, Nussbaum & Zavertnik, P.A. v. Baucom, 428 So. 2d 1383, 1384 (Fla. 1983)).  The requirements for imposing an attorney's charging lien are not codified in a Florida statute, but rather are governed by case law.  See Daniel Mones, P.A. v. Smith, 486 So. 2d 559, 561 (Fla. 1986).

The essential requirements for imposing a charging lien under Florida law are clear:

> (1) a contract between the attorney and client; (2) an express or implied understanding that payment is either contingent upon recovery or will be paid from the recovery; (3) an attempt by the client to avoid paying or a dispute as to the amount of the fee; and (4) a timely notice of a request for a lien.

In re Washington, 242 F.3d at 1323 (citing Sinclair, Louis, 428 So. 2d at 1385); accord Daniel Mones, 486 So. 2d at 561.  In order to establish a valid charging lien, the Firms must establish each of these requirements.  See In re Washington, 242 F.3d at 1323 ("[T]he interest created by a valid attorney's charging lien arises by operation of law when all of the requirements of such a lien are satisfied . . . .").

The government concedes, as they must, that, based on the allegations contained in the complaint, the first two requirements have been met.  But the Firms have failed to establish the third requirement.  There is nothing in this record even to suggest that the Firms' clients have attempted to avoid paying the Firms or have disputed the amount of the fee. In fact, there is no indication in this record of

any dispute at all between the Firms and their clients. Rather, as the district court observed, the real dispute here is between the clients and the IRS.

Most significantly, the clients never recovered the seized funds, so there were no proceeds from which they could have paid the Firms their contingency fee. Simply put, the imposition of a charging lien requires actual proceeds recovered from a judgment; the judgment alone will not suffice. Florida's intermediate appellate courts have repeatedly explained that a charging lien "may not issue if no proceeds have been recovered." Yavitz v. Martinez, Charlip, Delgado & Befeler, 568 So. 2d 103, 105 (Fla. 3d Dist. Ct. App. 1990); Pasin v. Kroo, 412 So. 2d 43, 44 (Fla. 3d Dist. Ct. App. 1982); see also Rudd v. Rudd, 960 So. 2d 885, 887 (Fla. 4th Dist. Ct. App. 2007) ("[T]he lien will attach only to the tangible fruits of the services." (quoting Mitchell v. Coleman, 868 So. 2d 639, 641 (Fla. 2d Dist. Ct. App. 2004))); Litman v. Fine, Jacobson, Schwartz, Nash, Block & England, P.A., 517 So. 2d 88, 92 (Fla. 3d Dist. Ct. App. 1987) ("[A]lthough it is said that a charging lien attaches to the judgment, where there are no proceeds of the judgment, there is nothing to which a lien may, as a practical matter, attach." (citation omitted)). In other words, the fact that the Firms obtained a favorable state court judgment was not sufficient for the imposition of an attorney's charging lien. Actual recovery of the seized funds was required for a valid lien to attach, but the Firms' own pleadings confirm that the seized funds were transferred to the IRS

11

and never returned to their clients.  Accordingly, the clients, in turn, had no opportunity to pay their lawyers from a nonexistent recovery, nor, for that matter, did they dispute any obligation to pay any fee.  Thus, the third requirement for a valid attorney's charging lien was plainly unsatisfied in this case.  As the district court observed, the Firms' interest is most accurately described as a future expectancy to a payment from their clients that becomes enforceable only if the seized funds are returned.

Since the Firms lacked a valid attorney's charging lien or other specific, possessory interest in the funds levied upon by the IRS, they were without standing to bring this wrongful levy action, and accordingly we affirm the dismissal for lack of subject matter jurisdiction.  Inasmuch as the plaintiffs lacked standing, we have no occasion to address the timeliness issue.

## III.

Finally, the Firms claim they should have been granted leave to amend their complaint to assert a procedural due process claim, because they were not given notice of the levy and an opportunity for a hearing.  Again we agree with the district court that granting the Firms leave to amend in order to allege a procedural due process claim would have been futile.  "To state a claim for the denial of property without due process of law, the plaintiff must allege (1) deprivation of a constitutionally protected property interest; (2) governmental action; (3) and

12

constitutionally inadequate process." Miccosukee Tribe of Indians v. United States, 716 F.3d 535, 559 (11th Cir. 2013). Since the Firms lacked standing to bring their claims under the wrongful levy statute, the amendment would have been futile.

But even if we were to assume the Firms' inchoate future expectancy to some portion of the funds amounts to a protected property interest, the Firms still would not be able to show constitutionally inadequate process. In order to succeed on a due process claim, the Firms would have to establish that the IRS had an obligation to provide them with notice of the levy. This claim would almost surely fail. While the Internal Revenue Code requires the IRS to give notice and opportunity for a hearing to the delinquent taxpayer whose liabilities will be satisfied by the levy, 26 U.S.C. §§ 6330, 6331(a), (d), the statute is silent on third party claimants, and numerous courts have held that the IRS is under no obligation to seek out all potential third party claimants to levied property in order to provide them with notice of the levy. See, e.g., Williams v. United States, 947 F.2d 37, 39 (2d Cir. 1991) ("Notice of the levy to all potential competing claimants to the property would be impractical and overly burdensome on the government and, therefore, is not required."); Dieckmann v. United States, 550 F.2d 622, 624 (10th Cir. 1977) ("26 U.S.C. § 7426 does not impose a duty on the United States to give notice to a possible third-party claimant or to search for them."); Expoimpe v.

13

United States, 609 F. Supp. 1098, 1101 (S.D. Fla. 1985); Am. Honda Motor Co. v. United States, 363 F. Supp. 988, 991-92 (S.D.N.Y. 1973).   This rule makes practical sense, at least under the circumstances of this case.   A contrary rule would require us to conclude that the IRS was supposed to somehow apprise itself of the contingency fee contracts between the Firms and their clients, determine whether the Firms had a valid interest in the funds, and then, if so, notice the Firms of the levy.   Any such resolution would be impractical and unworkable.   In short, the district court did not err in reasoning that the amendation would have been futile.

   **AFFIRMED**.