# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
July 6, 2021

Lyle W. Cayce
Clerk

No. 20-30422

WALTER G. GOODRICH, *in his capacity as* THE INDEPENDENT EXECUTOR *on behalf of* HENRY GOODRICH SUCCESSION; WALTER G. GOODRICH; HENRY GOODRICH, JR.; LAURA GOODRICH WATTS,

*Plaintiffs—Appellants*,

*versus*

UNITED STATES OF AMERICA,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-610

Before HIGGINBOTHAM, STEWART, and WILSON, *Circuit Judges*.
CARL E. STEWART, *Circuit Judge*:

Plaintiffs-Appellants Walter G. "Gil" Goodrich (individually and in his capacity as the executor of his father—Henry Goodrich, Sr.'s—succession), Henry Goodrich, Jr., and Laura Goodrich Watts brought suit against Defendant-Appellee United States of America. Henry Jr. and Laura are also Henry Sr.'s children. Plaintiffs claimed that, in an effort to discharge Henry Sr.'s tax liability, the Internal Revenue Service ("IRS") has

No. 20-30422

wrongfully levied their property, which they had inherited from their deceased mother, Tonia Goodrich, subject to Henry Sr.'s usufruct. Among other holdings not relevant to the disposition of this appeal, the magistrate judge[1] determined that Plaintiffs were not the owners of money seized by the IRS and that represented the value of certain liquidated securities. This appeal followed.

Whether Plaintiffs are in fact owners of the disputed funds is an issue governed by Louisiana law. For the reasons that follow, we conclude that the Louisiana Supreme Court should have the chance to resolve this issue in the first instance.

## I. FACTS & PROCEDURAL HISTORY

Henry Sr. and Tonia, Louisiana residents, owned community property during their marriage, including personal property, oil-and-gas rights, and shares of stock and stock options in Goodrich Petroleum Corporation (the "Goodrich securities"). Tonia died in 2006. Her succession, which was completed in 2015, left her interest in some of the community property, including the Goodrich securities, to her children subject to Henry Sr.'s usufruct. During his life, Henry Sr. sold $857,914 worth of the Goodrich securities. One half of that amount—$428,957—belonged to Henry Sr. given his community interest in the property, while the other half was attributable to Plaintiffs' naked ownership subject to Henry Sr.'s usufruct. At issue on appeal is Plaintiffs' claim to their share of those proceeds.

Henry Sr. died in March 2014 having failed to pay $38,029 in assessed income tax for that year, in addition to $312,078 for 2013 and $214,806 for

---

[1] Pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73, the magistrate judge presided over this case by consent of the parties.

2012. A month after Henry Sr. passed away, his executor, Gil, opened a succession checking account.[2] Notwithstanding the money placed in the savings account, "[a]ll estate funds and expenses have passed through [the checking] account." In April 2017, the IRS placed a levy on the checking account in order to collect Henry Sr.'s unpaid taxes. In May 2017, the bank remitted all of the remaining funds within the checking account— $239,927—to the IRS. The IRS applied that amount to Henry Sr.'s 2012 tax liability, which also included penalties and interest and totaled $238,922 as of the date Henry Sr. passed away. There remains a combined outstanding balance of $471,818 on Henry Sr.'s 2013 and 2014 tax liability.

The same month that the bank remitted the $239,927 payment to the IRS, Plaintiffs filed this lawsuit claiming under I.R.C. § 7426(a)(1)[3] that the agency had wrongfully levied those funds. Relevant to this appeal, the operative complaint alleged that the IRS had taken money that in actuality belonged to Plaintiffs as owners of nearly half-a-million dollars' worth of liquidated Goodrich securities. The parties filed cross-motions for summary judgment. As part of their motion, Plaintiffs attached a final accounting of Henry Sr.'s succession, which indicated that all of the cash remaining in the succession was needed to satisfy Plaintiffs' property claims against it.

Without considering whether he had subject-matter jurisdiction to entertain Plaintiffs' claim, the magistrate judge partly granted and denied the Government's and Plaintiffs' motions and issued a final judgment. More

---

[2] He also opened a succession savings account, but that account is not relevant to the disposition of this appeal.

[3] This provision states: "If a levy has been made on property . . ., any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." § 7426(a)(1).

specifically, the magistrate judge ordered the IRS to return $86,774, which represented Plaintiffs' share of proceeds from the sale of personal property and oil-and-gas revenues that had been deposited into the succession checking account. The magistrate judge, however, held that Plaintiffs were not entitled to any funds attributable to their portion of the liquidated Goodrich securities. Relying on a Louisiana appellate court decision and the *Louisiana Civil Law Treatise*, he reasoned that the IRS's claim to that money took priority over that of Plaintiffs since they were "unsecured creditors" of Henry Sr.'s succession.

Plaintiffs timely appealed, contending that they are owed the remaining amount levied from the succession checking account, i.e., $153,153, since it reflects (at least some of) their share of the liquidated Goodrich securities.

## II. STANDARD OF REVIEW

"Jurisdiction cannot be waived, and it is the duty of a federal court first to decide, sua sponte if necessary, whether it has jurisdiction before the merits of the case can be addressed." *Filer v. Donley*, 690 F.3d 643, 646 (5th Cir. 2012). "When courts lack subject matter jurisdiction over a case, they lack the power to adjudicate the case" and must dismiss it. *Nat'l Football League Players Ass'n v. Nat'l Football League*, 874 F.3d 222, 225 (5th Cir. 2017). "Questions of subject-matter jurisdiction are reviewed de novo." *Zimmerman v. City of Austin*, 969 F.3d 564, 567 (5th Cir. 2020).

## III. DISCUSSION

### A. Overview of § 7426(a)(1)

When an individual neglects or refuses to pay his or her taxes, a lien arises on "all property and rights to property" belonging to that person once the IRS assesses the tax liability. I.R.C. §§ 6321–22. The IRS may then

collect the unpaid taxes through placing an administrative levy on the property. I.R.C. § 6331(a). Congress, however, has afforded third parties such as Plaintiffs the right to challenge the IRS's levy when they have an "interest" in the property. *See* § 7426(a)(1). In a suit for wrongful levy, the plaintiff cannot challenge the tax assessment itself, but rather the IRS's ability to collect the tax. *Myers v. United States*, 647 F.2d 591, 603 (5th Cir. Unit A 1981). "[T]o establish a wrongful levy claim a plaintiff must show (1) that the IRS filed a levy with respect to a taxpayer's liability against property held by the non-taxpayer plaintiff, (2) the plaintiff had an interest in that property superior to that of the IRS and (3) the levy was wrongful." *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 283 (5th Cir. 2000). The last element requires the plaintiff to demonstrate "some interest in the property to establish standing." *Id.*

The Fifth Circuit has yet to clarify whether the standing requirement is jurisdictional or what satisfies this standard. As to the former, the parties' appellate briefing does not provide the court any guidance, having assumed (like the magistrate judge) that the standing requirement is a merits issue.[4] The question here is whether Plaintiffs have an interest in the levied funds sufficient for a court to conclude that their claim falls within the scope of § 7426(a)(1). *See* § 7426(a)(1). Since that inquiry requires interpretation of a statute, it would seem to go to the merits of Plaintiffs' claim. But § 7426(a)(1) operates as a waiver of the United States's sovereign immunity from suit, *Oxford,* 211 F.3d at 283, and "[s]overeign immunity is jurisdictional," *Cozzo v. Tangipahoa Par. Council--President Gov't*, 279 F.3d 273, 280 (5th Cir. 2002). Thus, if Plaintiffs lack standing for their wrongful levy claim, then sovereign immunity applies, *see McGinness v. U.S., I.R.S.*, 90 F.3d 143, 145

---

[4] The Government did argue in its summary judgment briefing that the standing requirement is jurisdictional.

(6th Cir. 1996) (noting that standing is a "prerequisite[] for establishing a § 7426 waiver of sovereign immunity"); *Arford v. United States*, 934 F.2d 229, 232 (9th Cir. 1991) (same), and the magistrate judge lacked subject-matter jurisdiction over the claim, *see Bodin v. Vagshenian*, 462 F.3d 481, 484 (5th Cir. 2006) (holding that federal courts are "deprive[d]" of subject-matter jurisdiction when there is no waiver of sovereign immunity).[5]

With respect to what qualifies as an "interest" in property for the purposes of § 7426(a)(1), other circuits have held that "the right of a third party to challenge a wrongful levy is confined to persons who have a fee simple or equivalent interest, a possessory interest, or a security interest in the property levied upon." *Austin & Laurato, P.A. v. United States*, 539 F. App'x 957, 960 (11th Cir. 2013) (per curiam) (quoting *Frierdich v. United States*, 985 F.2d 379, 383 (7th Cir. 1993) and citing additional cases from other circuits); *Allied/Royal Parking L.P. v. United States*, 166 F.3d 1000, 1005 (9th Cir. 1999) (same). The *Frierdich* court explained that its standard is grounded in a contextual reading of § 7426(a)(1); for, "[w]hen [the terms] interest and lien are conjoined, the inference arises that the legislature was referring to ownership or its near equivalents[.]" 985 F.2d at 381. It added that unsecured creditors cannot sue for wrongful levy. *Id.* at 383. "To hold otherwise," as another decision upon which *Frierdich* relied observed, "would invite litigation from numerous parties only remotely aggrieved by IRS levies, with consequent disruptive effects on federal tax enforcement." *Valley Fin., Inc.*

---

[5] The operative complaint averred jurisdiction under both § 7426 and 28 U.S.C. § 1346(e). Section 1346(e) provides district courts with original jurisdiction over specific civil actions against the United States, such as those for wrongful levy. It does not independently permit a plaintiff to sue the government when the United States has not otherwise waived its sovereign immunity.

*v. United States*, 629 F.2d 162, 168 (D.C. Cir. 1980); *see Frierdich*, 985 F.2d at 381–83. We adopt *Frierdich*'s definition of "interest" as used in § 7426(a)(1).

### B. Intersection of Federal Tax Law with Louisiana Law

The dispositive question here is whether Plaintiffs have demonstrated the requisite interest in the disputed funds. Indeed, Plaintiffs acknowledge that, the Government prevails if they are creditors rather than owners of the money. "[I]n the application of a federal revenue act," including the Internal Revenue Code, "state law controls in determining the nature of the legal interest which the taxpayer had in the property sought to be reached by the statute." *Aquilino v. United States*, 363 U.S. 509, 513 (1960) (citation and footnote omitted). Hence, to answer the question posed above, we must apply relevant state law, which in this case is the law of Louisiana.

"To determine Louisiana law, we look to the final decisions of the Louisiana Supreme Court." *Chevron Oronite Co., L.L.C. v. Jacobs Field Servs. N. Am., Inc.*, 951 F.3d 219, 225 (5th Cir. 2020) (citation omitted). However, as Plaintiffs observe, "No Louisiana court[,]" let alone that state's highest court, "has decided the precise issue of whether the naked owner of [money] occupies the status of owner or creditor." Given this, we could make a guess as to how the Louisiana Supreme Court would address the issue per *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, (1938). But we can avoid making such a guess by invoking Rule XII, § 1 of Louisiana's high court, which states:

> When it appears to . . . any circuit court of appeal of the United States, that there are involved in any proceedings before it questions or propositions of law of this state which are determinative of said cause independently of any other questions involved in said case and that there are no clear controlling precedents in the decisions of the supreme court of this state, such federal court before rendering a decision may certify such questions or propositions of law of this state to the Supreme Court of Louisiana for rendition of a judgment or

No. 20-30422

opinion concerning such questions or propositions of Louisiana law.

LA. SUP. CT. R. XII, § 1; *accord* LA. STAT. ANN. § 13:72.1.A. While neither Plaintiffs nor the Government have "moved this court to certify [a] question to the Louisiana Supreme Court, . . . the Rule further provides that certification 'may be invoked by . . . any circuit court of appeal of the United States upon its own motion[.]'" *See Coleman v. OFS, Inc.*, 554 F. App'x 251, 255 (5th Cir. 2013) (per curiam) (quoting LA. SUP. CT. R. XII, § 2).

We consider several factors to assist us in deciding whether to certify a question since "[w]e are acutely aware that certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state." *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citation and internal quotation marks omitted). Those factors are:

> (1) the closeness of the question and the existence of sufficient sources of state law; (2) the degree to which considerations of comity are relevant in light of the particular issue and case to be decided; and (3) practical limitations of the certification process: significant delay and possible inability to frame the issue so as to produce a helpful response on the part of the state court.

*McMillan v. Amazon.com, Inc.*, 983 F.3d 194, 202 (5th Cir. 2020) (citation omitted). We conclude that each factor weighs in favor of certification here.

Regarding the first factor, "[i]t is axiomatic that in Louisiana, courts must begin every legal analysis by examining primary sources of law: the State's Constitution, codes, and statutes." *Shaw Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 546 (5th Cir. 2004) (citations omitted). Relevant here is the Louisiana Civil Code, though it does not overtly answer the question posed by this case. The parties agree that Henry Sr. held a usufruct

of consumables over the money at issue. According to the Code, "[i]f the things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound to pay to the naked owner either the value that the things had at the commencement of the usufruct or deliver to him things of the same quantity and quality." LA. CIV. CODE ANN. art. 538. Likewise, Article 629 states, "At the termination of a usufruct of consumables, the usufructuary is bound to deliver to the owner things of the same quantity and quality or the value they had at the commencement of the usufruct." LA. CIV. CODE ANN. art. 629. Notably, the Code does not clarify the naked owner's relationship to consumables at the conclusion of a usufruct.

Nevertheless, several courts have attempted to discern the nature of that relationship. In *Succession of Catching*, upon which the magistrate judge relied in determining that the IRS need not return to Plaintiffs the funds at issue, an individual became the naked owner of $476,758 worth of consumables when his mother died, subject to his father's usufruct. 35 So. 3d 449, 450 (La. App. 2 Cir. 2010). During his lifetime, the father made a bequest to a church of $100,000. *Id.* When he passed away, his total assets were worth $330,307. *Id.* The church sought the $100,000 legacy gift from the father's succession. *Id.* at 450–51. The appeal court, having applied Articles 536[6] and 538 of the Code, denied the church's request because the consumables held by a usufructuary "became a debt owed by the succession to the naked owner" at the termination of the usufruct and the succession

---

[6] Article 536 defines consumables as "those that cannot be used without being expended or consumed, or without their substance being changed, such as money, harvested agricultural products, stocks of merchandise, foodstuffs, and beverages." LA. CIV. CODE ANN. art. 536.

was worth less than the debt owed. *Id.* The son's priority over the church was a function of his father's will, which stated that "all administration debts be paid before any legacies were distributed." *Id.* at 450. Consequently, even if the son did not own the funds in dispute, his claim to them still took priority over that of the church. *Catching* is therefore only so helpful to the resolution of the instant dispute.

The same could be said for another decision cited by the parties, *Stewart v. Usry*, 399 F.2d 50 (5th Cir. 1968). In that case, this court observed that an "imperfect" usufructuary, i.e., one of consumables, becomes a "debtor" of the naked owner when the usufruct ends. *Id.* at 55 (quoting *Burdin v. Burdin*, 129 So. 651, 654 (La. 1930)). However, it clarified that the connection between the usufructuary and naked owner is more one of "quasi debtor-creditor." *Id.* Quoting a French commentator's—Marcel Planiol's—treatise of civil law, the court clarified "that something more than an ordinary debtor-creditor association is contemplated: 'the relations between the usufructuary and the naked owner are not those of an ordinary debtor and creditor. What is involved here is not so much the return of a sum of money, as a restitution of the capital subject to usufruct, whose enjoyment cannot be extended beyond the duration of the usufruct[.]'" *Id.* at 55 n.10 (citation omitted). But the court left for another day what that "something more" may be.

Even if Henry Sr. as a usufructuary of consumables was in debt to his children as naked owners, that does not necessarily mean Plaintiffs were unsecured creditors. Whatever the exact nature of his debt may be, we determine that "the only court that can adjudicate [the question] with finality"—the Louisiana Supreme Court—should have an opportunity to provide an answer. *See McMillan*, 983 F.3d at 196.

No. 20-30422

With respect to the second factor, this court has observed that "certification may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed." *Katrina Canal Breaches*, 613 F.3d at 509 (citation omitted). Such interests are involved here since a determination of the naked owner's relationship to consumables will affect the rights of all individuals and entities, including the naked owners themselves, who have competing claims to a usufructuary's assets.

Finally, the third factor also weighs in favor of certification because we "perceive no hardship in certifying the question[s]" stated below. *See Silguero v. CSL Plasma, Inc.*, 907 F.3d 323, 333 (5th Cir. 2018). The court "can formulate [a] discrete issue[] for consideration" and there is no indication that the Louisiana Supreme Court will be unable to respond promptly. *See id.* Additionally, there is no risk of the IRS losing the ability to refund the remaining portion levied from Henry Sr.'s succession checking account if certification will delay resolution of this appeal.

\* \* \*

We certify the following questions to the Louisiana Supreme Court:

1. Does a usufructuary's testamentary usufruct of consumables render naked owners unsecured creditors of the usufructuary's succession?

2. If not, what is the naked owner's relationship to those consumables?

Should the Louisiana Supreme Court accept our request for answers to these questions, we disclaim any intention or desire that it confine its reply to the precise form or scope of the questions certified. Along with our certification, we transfer this case's record and the briefs submitted by the parties. We will resolve this case in accordance with any opinion provided on

11

No. 20-30422

these questions by the Louisiana Supreme Court. Accordingly, the Clerk of this court is directed to transmit this certification and request to the Louisiana Supreme Court in conformity with the usual practice of this court.