# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

January 25, 2022

Lyle W. Cayce
Clerk

No. 20-30422

Walter G. Goodrich, in his capacity as the Independent
Executor on behalf of Henry Goodrich Succession;
Walter G. Goodrich; Henry Goodrich, Jr.; Laura
Goodrich Watts,

*Plaintiffs—Appellants*,

*versus*

United States of America,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:17-CV-610

---

Before Higginbotham, Stewart, and Wilson, *Circuit Judges*.
Per Curiam:*

This case returns to us after the Louisiana Supreme Court denied this court's request for certification in November of 2021. In its per curiam opinion denying certification, the supreme court references the Louisiana

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30422

Civil Code and two Louisiana appellate court decisions. Upon further consideration of this applicable statutory and case law, we AFFIRM.

### I. FACTUAL & PROCEDURAL BACKGROUND[1]

Louisiana residents Henry Goodrich, Sr. ("Henry Sr.") and his wife Tonia owned community property during their marriage which included shares of stock and stock options in the Goodrich Petroleum Corporation (the "Goodrich securities"). Tonia died in 2006.[2] Her succession, which was completed in 2015, left her interest in some of the community property, including the Goodrich securities, to the couple's three children—Walter G. Goodrich ("Gil"), Henry Goodrich, Jr., and Laura Goodrich Watts (collectively, "the Goodriches")—subject to a usufruct in favor of Henry Sr.

Before his death, Henry Sr. sold $857,914 worth of the Goodrich securities. One half of that amount—$428,957—belonged outright to Henry Sr. given his community interest in the property, while the other half was attributable to the Goodriches' naked ownership subject to Henry Sr.'s usufruct. At issue on appeal is the Goodriches' claim to their share of these proceeds.

Henry Sr. died in March 2014 having failed to pay $38,029 in assessed income tax for that year, in addition to $312,078 for 2013 and $214,806 for 2012. A month later, his son and executor, Gil, opened a succession checking account[3] and all relevant estate funds and expenses were passed through that

---

[1] Although we provided much of the relevant factual and procedural background in our first opinion, *see Goodrich v. United States*, 3 F.4th 776 (5th Cir. 2021), we do so again here to the extent necessary for ease of comprehension.

[2] After Tonia's death, Harry Sr. married Laurice W. Rountree and the two entered into a separate property regime that has no bearing on this appeal.

[3] Gil also opened a succession savings account, but the funds from that account are not relevant to the disposition of this appeal.

account. In April 2017, the IRS placed a levy on the checking account to collect Henry Sr.'s unpaid taxes. In May 2017, the bank remitted all of the remaining funds in the checking account—$239,927—to the IRS. The IRS applied that amount to Henry Sr.'s 2012 tax liability, which also included penalties and interest and totaled $238,922 as of the date he passed away. Thereafter, a combined outstanding tax liability balance of $471,818 remained for the 2013 and 2014 tax years.

After the IRS levied the funds from the checking account, the Goodriches filed this lawsuit claiming that the agency had wrongfully levied the funds under I.R.C. § 7426(a)(1).[4] The operative complaint alleged that the IRS had taken money that rightfully belonged to the Goodriches because they were the owners of nearly $500,000 worth of liquidated Goodrich securities, representing Henry Sr.'s half of the community property he shared with Tonia, subject to the children's usufruct. Both parties filed cross-motions for summary judgment. As part of their motion, the Goodriches attached a final accounting of Henry Sr.'s succession, which indicated that all of the cash remaining in the succession was needed to satisfy their property claims against it.

The magistrate judge granted in part and denied in part the Government's and the Goodriches' summary judgment motions[5] and issued

---

[4] This provision states: "If a levy has been made on property . . . any person (other than the person against whom is assessed the tax out of which such levy arose) who claims an interest in or lien on such property and that such property was wrongfully levied upon may bring a civil action against the United States in a district court of the United States." I.R.C. § 7426(a)(1).

[5] The competing summary judgment motions involved claims to proceeds from the sale of certain personal property as well as mineral interest revenues, none of which are at issue in this appeal.

No. 20-30422

a final judgment.[6] In his judgment, the magistrate judge ordered the IRS to return $86,774, which represented the Goodriches' share of proceeds from the sale of some of the community property that had been deposited into the succession checking account. However, the magistrate judge held that the Goodriches were not entitled to any funds attributable to their portion of the liquidated Goodrich securities. Relying on Louisiana state court precedent and the *Louisiana Civil Law Treatise*, he reasoned that the IRS's claim to that money took priority over that of the Goodriches since they were essentially "unsecured creditors" of the disputed funds in Henry Sr.'s succession.

The Goodriches timely appealed. On appeal, they contend that they are owed the remaining amount levied from the succession checking account, i.e., $153,152.74, because it reflects part of their share of the liquidated Goodrich securities. We disagree.

## II. STANDARD OF REVIEW

We review a district court's ruling on a motion for summary judgment de novo. *Sanders v. Christwood*, 970 F.3d 558, 561 (5th Cir. 2020). "Summary judgment is proper 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Id.* (citing FED. R. CIV. P. 56(a)).

## III. DISCUSSION

When a taxpayer fails to pay his or her taxes, a lien arises on "all property and rights to property" belonging to that person once the IRS assesses the tax liability. I.R.C. §§ 6321–22. The IRS may then collect the unpaid taxes by placing an administrative levy on the property. *Id.* § 6331(a).

---

[6] Pursuant to 28 U.S.C. § 636 and Federal Rule of Civil Procedure 73, the magistrate judge presided over this case by consent of the parties.

No. 20-30422

Third parties such as the Goodriches are permitted to legally challenge the IRS's levy when they have an "interest" in the property. *Id.* § 7426(a)(1). In a suit for wrongful levy, the plaintiff cannot challenge the tax assessment itself, but rather the IRS's ability to collect the tax. *Myers v. United States*, 647 F.2d 591, 603 (5th Cir. 1981). "[T]o establish a wrongful levy claim a plaintiff must show (1) that the IRS filed a levy with respect to a taxpayer's liability against property held by the non-taxpayer plaintiff, (2) the plaintiff had an interest in that property superior to that of the IRS and (3) the levy was wrongful." *Oxford Cap. Corp. v. United States*, 211 F.3d 280, 283 (5th Cir. 2000). "To prove that a levy is wrongful, (1) a plaintiff must first show some interest in the property to establish standing,[7] (2) the burden then shifts to the IRS to prove a nexus between the property and the taxpayer, and (3) the burden then shifts back to the plaintiff to prove the levy was wrongful, e.g., that the property in fact did not belong to the taxpayer." *Id.* Other circuits have held that unsecured creditors cannot sue for wrongful levy because holding "otherwise would invite litigation from numerous parties only remotely aggrieved by IRS levies, with consequent disruptive effects on federal tax enforcement." *Valley Fin., Inc. v. United States*, 629 F.2d 162, 168 (D.C. Cir. 1980); *see also Frierdich v. United States*, 985 F.2d 379, 381–83 (7th Cir. 1993).

The dispositive question here is whether Louisiana law assigns to the Goodriches a primary interest in the securities as owners or a secondary interest in the securities as creditors. The Goodriches acknowledge on appeal that the IRS prevails if they are considered creditors rather than owners of the disputed funds. "[I]n the application of a federal revenue act," including the Internal Revenue Code, "state law controls in determining the nature of

---

[7] For purposes of our analysis here, we assume as the magistrate judge did that the standing requirement is a merits issue.

the legal interest which the taxpayer had in the property sought to be reached by the statute." *Aquilino v. United States*, 363 U.S. 509, 513 (1960) (internal citation and footnote omitted). Accordingly, we apply Louisiana law at this juncture in our analysis.

It is undisputed that the Goodriches' relationship to the Goodrich securities derives from their status as naked owners of consumables, *i.e.*, funds they inherited from Tonia, subject to Henry Sr.'s usufruct. Louisiana Civil Code Article 535 states that a "[u]sufruct is a real right of limited duration on the property of another. The features of the right vary with the nature of the things subject to it as consumables or nonconsumables." LA. CIV. CODE art. 535. Consumables are defined as things that "cannot be used without being expended or consumed, or without their substance being changed, such as money, harvested agricultural products, stocks of merchandise, foodstuffs, and beverages." LA. CIV. CODE art. 536. Article 538 discusses usufructs of consumable things and provides:

> If the things subject to the usufruct are consumables, the usufructuary becomes owner of them. He may consume, alienate, or encumber them as he sees fit. At the termination of the usufruct he is bound either to pay to the naked owner the value that the things had at the commencement of the usufruct or to deliver to him things of the same quantity and quality.

LA. CIV. CODE art. 538. The *Louisiana Civil Law Treatise* observes that "[a] usufruct of consumables differs from a usufruct of nonconsumables because the usufructuary acquires ownership of the things and the naked

No. 20-30422

owner becomes a general creditor[8] of the usufructuary." 3 A. N. YIANNOPOULOS, LA. CIV. L. TREATISE § 1:3 (5th ed. 2020).

We now turn to the Louisiana Second Circuit's decision in *Succession of Catching*, 35 So. 3d 449 (La. App. 2 Cir. 2010), which the magistrate judge relied on and which provides the best guidance for applying Civil Code Article 538 to the facts of this case. There, Phillip Catching became the naked owner of $476,758 worth of consumables when his mother died, subject to his father's usufruct. *Id.* at 450. Before the father died, he made a $100,000 bequest to a church that later sought the legacy gift from his succession. *Id.* When the father died, however, his total assets were only worth $330,307. *Id.* In other words, there were insufficient funds to cover Phillip's inheritance and the church's legacy gift. *Id.* Applying Civil Code Articles 536 and 538, the court denied the church's claim for the legacy gift because the consumables held by the usufructuary (the father) "became a debt owed by

---

[8] A "general creditor" is synonymous with "unsecured creditor." *See Unsecured Creditor*, BLACK'S LAW DICTIONARY (11th ed. 2019).

the succession to the naked owner" (Phillip) at the termination of the usufruct and the succession was worth less than the debt owed.[9] *Id.* at 451.[10]

Applying *Succession of Catching* to the facts of this case, we agree with the magistrate judge that the Goodriches had a claim against Henry Sr.'s estate in connection with the Goodrich securities, but they did not immediately become owners of the disputed funds at the time of his death. Rather, they became "unsecured creditors" of the succession with respect to their claim. Consequently, the IRS did not seize funds or property that the Goodriches legally owned at the time, so the levy was not wrongful. *See Oxford Cap. Corp.*, 211 F.3d at 283. And as the Goodriches concede, because they are considered creditors rather than owners of the disputed funds, the IRS prevails because it has priority over other creditors. *See* I.R.C. § 6323 (providing that the IRS can establish the priority of its lien over third parties by filing a notice of a federal tax lien). For these reasons, we hold that the magistrate judge did not err in granting summary judgment in favor of the

---

[9] In this case, Phillip's priority over the church was a function of his father's will, which stated that "all administration debts be paid before any legacies were distributed." *Succession of Catching*, 35 So. 3d at 450. Although this precise factual scenario is not present in the case before us, we are nevertheless informed by the court's explanation that consumables held by a usufructuary become "a debt owed by the succession to the naked owner" upon the death of the usufructuary. *Id.* at 451.

[10] *See also Succession of Majoue*, 705 So. 2d 225, 229 (La. App. 5 Cir. 1997) ("At the termination of a usufruct of consumables, of which money is one, the usufructuary owes to the naked owners the value that the thing had at the commencement of the usufruct, La. Civ. Code, Arts. 536 and 538. This obligation is in the nature of a debt owed by the succession to the owners, and must therefore be shown as such on the sworn descriptive list. We therefore order that the sworn descriptive list be amended to show the claim of the grandchildren against the estate[.]"); *Stewart v. Usry*, 399 F.2d 50, 55 (5th Cir. 1968) (observing that an "imperfect" usufructuary, i.e., one of consumables, becomes a "debtor" of the naked owner when the usufruct ends (quoting *Burdin v. Burdin*, 129 So. 651, 654 (La. 1930)).

No. 20-30422

IRS with respect to the liquidated Goodrich securities levied from the succession checking account.

## IV. CONCLUSION

For the foregoing reasons, the magistrate judge's judgment is AFFIRMED.